IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEXAS HEALTH AND HUMAN SERVICES COMMISSION | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-cv-3851 |
| UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF STATE, JOHN KERRY in his Official Capacity as SECRETARY OF STATE, UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, SYLVIA BURWELL, in her Official Capacity as SECRETARY OF HEALTH AND HUMAN SERVICES, OFFICE OF REFUGEE RESETTLEMENT, ROBERT CAREY, in his Official Capacity as Director of the OFFICE OF REFUGEE RESETTLEMENT, and INTERNATIONAL RESCUE COMMITTEE, INC. | § § § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

TO THE HONORABLE JUDGE OF SAID COURT:

The Texas Health and Human Services Commission ("Commission" or "HHSC") seeks declaratory and injunctive relief against the United States of America, United States Department of State ("State Department"), John Kerry, in

his official capacity as Secretary of State, United States Department of Health and Human Services ("Department"), Sylvia Burwell in her official capacity as Secretary of Health and Human Services, Office of Refugee Resettlement ("ORR"), Robert Carey, in his official capacity as Director of the Office of Refugee Resettlement (collectively, "Federal Defendants"), and International Rescue Committee ("Committee"), regarding the Federal Defendants and Committee's actions in resettling refugees in Texas without consulting with Texas or working in close cooperation with the Commission as required by federal law and contracts with the Committee.

## I.  PARTIES

1. Plaintiff is the Texas Health and Human Services Commission. The Commission is the sole State agency responsible for the development and administration of refugee resettlement services in Texas. For purposes of this suit, the Commission represents the interests of the State of Texas.

2. Defendants are the United States of America, United States Department of State, John Kerry, in his official capacity as Secretary of State, United States Department of Health and Human Services, Sylvia Burwell in her official capacity as Secretary of Health and Human Services, Office of Refugee Resettlement, Robert Carey, in his official capacity as Director of the Office of Refugee Resettlement, and International Rescue Committee the International Rescue Committee, Inc.

## II.  JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this suit concerns breach of a statutory requirement under 8 U.S.C. § 1522 that the federal government "consult regularly" with States concerning "the intended distribution of refugees among the States . . . before their placement in those States" and that local voluntary agency activities should be conducted "in close cooperation and advance

consultation" with State governments.

4. The Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

5. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in the Northern District of Texas.

### III. FACTUAL BACKGROUND

6. Texas accepts approximately 10 percent of all refugees resettled in the United States—more than any other State. Texas performs this work by partnering with local volunteer agencies to help refugees transition to the State and pay for associated costs.

7. The Refugee Act of 1980 establishes a framework for collaboration and cooperation among the federal government, the States, and local volunteer agencies such as the Committee in resettling refugees. Highlighting the role of the States is the fact that section 1522 mentions States 14 times. Instead of adhering to that statutory framework, the federal government and the Committee have left Texas uninformed about refugees that could well pose a security risk to Texans and without any say in the process of resettling these refugees.

8. The Refugee Act of 1980 requires that the federal government "*shall consult regularly* (not less often than quarterly) with State and local governments and private nonprofit voluntary agencies concerning the sponsorship process and the *intended distribution of refugees among the States* and localities *before their placement in those States* and localities." 8 U.S.C. § 1522(a)(2)(A) (emphases added).

9. The Act further requires that, "in providing refugee assistance . . . local voluntary agency activities should be conducted in *close cooperation and advance consultation with State* and local governments." *Id.* § 1522(a)(1)(B)(iii) (emphasis

added).

10. In addition to Texas undertaking more than its share in the task of resettling refugees than any other State, Texas has the sovereign authority and duty to protect the safety of its residents. *See, e.g.*, *State v. Richards*, 301 S.W.2d 597, 602 (Tex. 1957) ("As a general rule the [police] power is commensurate with, but does not exceed, the duty to provide for the real needs of the people in their health, safety, comfort and convenience . . . ."); *Lombardo v. City of Dallas*, 73 S.W.2d 475, 479 (Tex. 1934) ("[T]he police power of a state embraces regulations designed to . . . promote the public health, the public morals, or the public safety."). The Texas Legislature established the Office of Immigration and Refugee Affairs in the Commission to "ensure coordination of public and private resources in refugee resettlement." TEX. GOV'T CODE §§ 752.001, .003.

11. As a baseline protection for such authority, federal law excludes refugees who have provided material support to terrorists. 8 U.S.C. § 1182(a)(3)(B). Previously, the President admitted less than 100 Syrian refugees per year. The President announced a policy goal of admitting 10,000 Syrian refugees this fiscal year. To accomplish this goal, the President granted a waiver to refugees who provided material support to terrorists if, among other things, the support was "insignificant" and the refugee "poses no danger to the safety and security of the United States." Exercise of Authority Under Section 212(d)(3)(B)(i) of the Immigration and Nationality Act, 79 Fed. Reg. 6913 (Feb. 5, 2014).

12. Members of the federal executive branch have expressed concern regarding this massive expansion of refugees from an area engulfed in fighting with ISIS. For example, the Director of the FBI recently told Congress that the federal government cannot conduct effective security checks on Syrian nationals. Director Comey testified that "we can query our databases until the cows come home but

nothing will show up because we have no record of that person." U.S. House of Representatives Committee on Homeland Security, *Nation's Top Security Officials' Concerns on Refugee Vetting* (Nov. 19, 2015), *available at* https://homeland.house.gov/press/nations-top-security-officials-concerns-on-refugee-vetting/. The Assistant Director of the FBI's Counterterrorism Division explained his "concern is in Syria, the lack of our footprint on the ground in Syria, that the databases won't have information we need. So it's not that we have a lack of process, it's that there is a lack of information." U.S. House of Representatives Committee on the Judiciary, *Goodlatte: Why Does the President Ignore Concerns About Syrian Refugees?* (Oct. 27, 2015), *available at* http://judiciary.house.gov/index.cfm/press-releases?ID=E0715056-77F0-4D8F-BA14-0FB1C1C4F7B4. The Director of National Intelligence summed up the worries of these federal counterterrorism experts: "We don't obviously put it past the likes of ISIL to infiltrate operatives among these refugees." *Nation's Top Security Officials' Concerns on Refugee Vetting*, *supra*.

13. In light of these concerns with the federal government massively expanding the admission of refugees who have materially supported terrorists, the Commission sent a letter to the Committee on November 19 asking it to apprise the Commission if it currently had plans to resettle Syrian refugees in Texas and that Texas, until further notice, will refuse to cooperate with the resettlement of any Syrian refugees in Texas. *See* Ex. A. The letter copied the Director of the Texas Department of Public Safety and the Deputy Director for Homeland Security and Services in the Department of Public Safety. *Id.*

14. In a phone call between the staff for the Committee and the Commission, the Committee informed the Commission that it intends to resettle six Syrian refugees in Dallas, Texas on Friday, December 4.

15. Some news inquiries have questioned whether this resettlement could

occur as early as Thursday, December 3. The Commission requested information regarding these refugees. The Committee responded that the State Department informed it that the request must go through the State Department because the information is not shareable by the Committee. The Commission requested the information in expedited fashion from the appropriate federal entity under the State Department on December 1. Ex. B.

16. A letter from the Executive Commissioner to the Committee on November 25 asked the Committee to contact the Commission by November 30 in order to work together in close cooperation and avoid termination of the contract or legal action. Ex. C. The Committee responded on November 30 and expressed an intent to communicate with the Commission. Ex. D.

17. In a letter to the Committee on December 1, the Commission asked the Committee to temporarily halt resettlement of Syrian refugees in Texas "until we have receive the requested information and our concerns with screening procedures have been appropriately addressed." Ex. H. The letter asked the Committee to confirm by 3pm on December 2 its intent to cooperate with the State. The Committee responded with its intention to continue working with the federal government to resettle Syrians in Texas. Ex. I.

### IV. CLAIMS FOR RELIEF

#### COUNT I
**Declaratory Judgment Under 28 U.S.C. §§ 2201-2202 that the Federal Defendants Have Failed to Consult Regularly with Texas Regarding the Intended Distribution of Refugees to Texas Before Placement in Texas**

18. The Commission incorporates the allegations contained in paragraphs 1 through 17 as if fully set forth herein.

19. The Refugee Act of 1980 requires that the federal government "*shall consult regularly* (not less often than quarterly) with State and local governments

and private nonprofit voluntary agencies concerning the sponsorship process and the *intended distribution of refugees among the States* and localities *before their placement in those States* and localities." 8 U.S.C. § 1522(a)(2)(A) (emphases added).

20. The Federal Defendants have breached this statutory duty of advance consultation with Texas by: 1) preventing Texas from receiving vital information to assess the security risk posed by the refugees in advance of their arrival, and 2) refusing to consult with the State in advance on placement of refugees in Texas.

### COUNT II
### Declaratory Judgment Under 28 U.S.C. §§ 2201-2202 that the Committee Has Failed a Contractual Duty to Work in Close Cooperation and Advance Consultation with Texas Before Placing Refugees in Texas

21. The Commission incorporates the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

22. The Refugee Act of 1980 requires that, "in providing refugee assistance . . . local voluntary agency activities should be conducted in *close cooperation and advance consultation with State* and local governments." 8 U.S.C. § 1522(a)(1)(B)(iii) (emphasis added).

23. The Committee is a local volunteer agency under the meaning of the Refuge Act of 1980.

24. The Commission entered into an agreement with the Committee to provide for refugee cash assistance, Ex. A at 11 (hereinafter "Refugee Cash Assistance Agreement") and an agreement to provide for refugee social services, Ex. B at 11 (hereinafter "Refugee Social Services Agreement"). Both contracts were entered into for good and valuable consideration.

25. Both contracts require the Committee to "[p]rovide services . . . [i]n compliance with this contract and with applicable Federal laws and regulation, state laws and regulations, and Commission policies including service delivery standards."

Ex. J at 5; Ex. K at 5. This necessarily includes the requirement in the Refugee Act of 1980 that the Committee work "in close cooperation and advance consultation" with the Commission. 8 U.S.C. § 1522(a)(1)(B)(iii).

26. The Committee announced its intent to continue to work with the federal government to resettle Syrians in Texas and is following instructions from the Federal Defendants to not provide information to the Commission or consult with the Commission in advance of resettling Syrian refugees in Texas.

27. Additionally, according to the cooperation clause in the contracts:

> The [Committee] must cooperate fully and allow [the Commission] and all appropriate federal and state agencies or their representative's access to client records, books, and supporting documents pertaining to services provided. [The Committee] must make documents available at reasonable times and for reasonable periods for the purpose of inspection, monitoring, auditing, or evaluating.

Ex. J at 1; Ex. K at 11. This Committee's conduct is a failure to adhere to this contractual requirement that prevents the State from exercising its police power to protect the safety of its residents.

28. Pursuant to the Commission's Uniform Terms and Conditions, incorporated into the contracts by reference, Ex. J at 7; Ex. K at 7, the Committee:

> acknowledges that, if [it] breaches (or attempts or threatens to breach) its obligations under this Agreement, *the State will be irreparably harmed*. . . . If a court of competent jurisdiction finds that [the Committee] breached (or attempted or threatened to breach) any such obligations, [the Committee] agrees that any additional findings of irreparable injury or other conditions to injunctive relief, *it will not oppose the entry of an appropriate order compelling performance* by [the Committee] and restraining it from any further breaches (or attempted or threatened breaches).

Ex. L at 22 (emphases added).

29. Accordingly, the Committee has admitted that its actions at the

instruction of the Federal Defendants, if the actions fail to comply with the contracts, will cause the State irreparable harm and the appropriate remedy is an order from the Court compelling the Committee work "in close cooperation and advance consultation" with the Commission on the resettlement of any Syrian refugees and to share its information that the Commission has requested and may request in the future.

30. All conditions precedent have been performed or have occurred.

## V. APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1. The Commission seeks a temporary restraining order and a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. In particular, the Commission requests the Court to preliminarily enjoin and/or stay any and all activities of the Defendants regarding placement of Syrian refugees in Texas unless and until the Defendants have complied with their aforementioned statutory and contractual obligations of consulting with Texas before placement and sharing information and working in close cooperation and advance consultation with the Commission.

2. The Commission also seeks to preserve the status quo pending this Court's final adjudication on declaratory judgment claims, the status quo being that, at present, the aforementioned refugees have yet to enter or establish residency in the State of Texas. Given the Defendants' lack of providing basic information regarding refugees to be placed in Texas, the Commission maintains a reasonable concern that the Committee may continue to operate with an unwillingness to consult in advance regarding placement of refugees in Texas or share information, closely cooperate, and consult in advance with the Commission.

3. The requirements for showing entitlement to a temporary restraining

order and preliminary injunction under Federal Rule of Civil Procedure 65 are identical. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). To obtain a temporary restraining order and a preliminary injunction, the Commission must show:

A. there is a substantial likelihood that the Commission will prevail on the merits;

B. there is a substantial threat that irreparable injury will result if the injunction is not granted;

C. the threatened injury outweighs the threatened harm to the Defendants; and

D. granting the preliminary injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Canal Auth. of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir. 1974).

**A.    There is a substantial likelihood that the Plaintiff will prevail.**

4.     For the reasons articulated in the Original Complaint, Plaintiff has demonstrated Defendants' breach of statutory and contractual duties by their unwillingness to consult in advance regarding placement of refugees in Texas or share information and closely cooperate with the Commission. Whatever "advance consultation" and "close cooperation" mean, this is not it.

5.     Further, the right of the Plaintiff to seek relief in this Court due to the failure of performance by the Committee is expressly provided in the contract between the parties.

**B.    There is a substantial threat that irreparable injury will result**.

6.     On or about Thursday, December 3 or Friday, December 4, a group of Syrian refugees are scheduled to arrive in Texas. Plans for the settlement of additional refugees may be underway. As mentioned herein, Plaintiff possesses reasonable concerns about the safety and security of the citizenry of the State of Texas

regarding these refugees that may seek resettlement within the State of Texas. The safety and security of the citizenry is the rightful concern of the sovereign and one of the many reasons why Plaintiff maintains an ongoing right to full cooperation, communication, collaboration, and candor with Defendants regarding its efforts in resettling foreign nationals amongst the Texas citizenry.

### C. The threatened injury to Plaintiff and the State's citizenry outweighs any threatened harm to Defendants.

7. As stated above, Plaintiff has reasonable concerns about the safety and security of the State's citizens as a result of this week's anticipated resettlement of certain refugees. Plaintiff also is concerned that Defendants will continue refusing to consult in advance and to share information and work in close cooperation with Plaintiff as it pertains to the resettlement of refugees in the State, thus causing further injury.

8. The threatened harm to Plaintiff outweighs any harm to Defendants from a temporary halt of certain refugees pending a determination of whether Defendants are complying with their statutory and contractual obligations to consult in advance with the State on the resettlement of refugees in the State.

### E. A temporary restraining order and a preliminary injunction will not disserve the public interest.

9. A TRO and a preliminary injunction would allow Texas to exercise its sovereign authority and duty to protect the safety of its residents, thus serving the public interest.

10. Granting the preliminary injunction will maintain the status quo until the rights and duties of the parties can be finally adjudicated.

## V. PRAYER FOR RELIEF

The Commission respectfully petitions the Court to award the following relief against the Defendants:

A. An *ex parte* Temporary Restraining Order under Federal Rule of Civil Procedure 65(b) preventing the Defendants from resettling refugees to Texas until December 9 due to their violations of statutory duty to consult with the State in advance of placing refugees in Texas and statutory and contractual duty to provide information to the Commission and work in close cooperation with the Commission;

B. A hearing on the Motion for Preliminary Injunction no later than December 9.

C. A Preliminary Injunction preventing the Defendants from resettling Syrian refugees to Texas until the Court determines that Defendants are complying with their statutory and contractual duties to consult with Texas in advance of placing refugees and to provide information to the Commission and work in close cooperation with the Commission;

D. A declaration that the Defendants have breached their statutory and contractual duties to the State;

E. A permanent injunction compelling the Defendants to comply with their statutory and contractual duties to the State;

F. Reasonable and necessary attorney's fees for the Plaintiff; and

G. Such other and further relief to which the Plaintiff is justly entitled at law and in equity.

Dated:      December 2, 2015.

        Respectfully submitted,

        KEN PAXTON
        Attorney General of Texas

        CHARLES E. ROY
        First Assistant Attorney General

        BRANTLEY STARR
        Deputy Attorney General for Legal
         Counsel

        /s/ Austin R. Nimocks
        AUSTIN R. NIMOCKS
        Associate Deputy Attorney General for
         Special Litigation
        Texas Bar No. 24002695

        ANGELA V. COLMENERO
        Division Chief – General Litigation

        ADAM N. BITTER
        Assistant Attorney General

        General Litigation Division
        P.O. Box 12548, Capitol Station
        Austin, Texas 78711-2548

        *ATTORNEYS FOR PLAINTIFF*