**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| TEXAS HEALTH AND HUMAN SERVICES COMMISSION | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-cv-3851 |
| | § | |
| UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF STATE, JOHN KERRY in his Official Capacity as SECRETARY OF STATE, UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, SYLVIA BURWELL, in her Official Capacity as SECRETARY OF HEALTH AND HUMAN SERVICES, OFFICE OF REFUGEE RESETTLEMENT, ROBERT CAREY, in his Official Capacity as Director of the OFFICE OF REFUGEE RESETTLEMENT, and INTERNATIONAL RESCUE COMMITTEE, INC. | § | |
| | § | |
| Defendants. | § | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANT INTERNATIONAL RESCUE COMMITTEE'S MOTION TO DISMISS AMENDED COMPLAINT**

---

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting at *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As the verified facts of Plaintiff's Amended Complaint affirm, Plaintiff made very specific informational requests of IRC, none of which IRC has fulfilled. Even if Plaintiff's informational demands were less than specific, IRC's refusal to provide *any* information in response to Plaintiff's requests fails to fulfill even a minimal informational and cooperative requirement. Thus, by any measurement, Plaintiff's complaint against IRC states a viable claim.

## I. PLAINTIFF'S CLEAR INFORMATIONAL AND OTHER DEMANDS.

From the outset, Plaintiff has been clear and specific about its informational and program-related demands upon IRC. *See*, *e.g.*, the following non-exhaustive list:

(1) "[W]e now require that you provide immediate and ongoing consultation with Health and Human Services Office of Immigration and Refugee Affairs (OIRA) regarding any plans that may exist to resettle Syrian refugees in Texas." Doc. 13-3.

(2) "Please notify us immediately if, in the future, you learn that a Syrian refugee is proposed for resettlement in Texas with your organization." Doc. 13-3.

(3) "If you have any active plans to resettle Syrian refugees in Texas, please discontinue those plans immediately." Doc. 13-3.

(4) "Governor Abbott has responded by calling for a temporary halt to resettlement of any further refugees in Texas until concerns about the effectiveness of security screenings are addressed. I urge you to cooperate with the State of Texas, as required by law, as we work together to implement Governor Abbott's efforts to keep our doors open to refugees while at the same time keeping Texans secure." Doc. 13-5.

(5) Plaintiff requested from IRC, in a telephonic consultation, all information relating to Syrians scheduled for resettlement within Texas. Doc. 13 at ¶¶ 14-15. IRC refused and advised Plaintiff that it should acquire the information requested from the federal Defendants. The information sought from IRC was then articulated in writing in Plaintiff's letter to the federal Defendants, to wit: "[a]ll demographic, medical, security, and other case information relating to Syrians slated or scheduled for resettlement in Texas." Doc. 13-4. And Plaintiff's request from the federal Defendants for "all information relating to Syrians slated or scheduled for resettlement in Texas during the next ninety days"—what it originally asked IRC to provide over the telephone—was reiterated to IRC in its Dec. 1, 2015 letter. Doc. 13-7.

Therefore, Plaintiff has been specific in its requests and demands of both information and cooperation by IRC. Even if Plaintiff's requests for information were somehow vague or non-specific, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And a complaint may proceed even if it appears "that a recovery is very remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## II. IRC'S NON-COOPERATION AND BREACH.

It is undisputed is that IRC has provided virtually nothing (and certainly nothing specific) in response to Plaintiff's requests for information. Doc. 13-7. In addition to failing to "cooperate," IRC additionally neglects its contractual duty to not "limit[ Plaintiff]'s right of access to recipient case records or other information relating to client served under this contract." Doc. 13-9 at 4. These facts alone would allow this Court to conclude that IRC has not complied with its contractual duty with Plaintiff as a matter of law. Additionally, in its attempts to avoid Plaintiff's targeted and specific requests for information, IRC seeks refuge within a myopic, though

unsubstantiated, interpretation of its statutory and contractual duties.

Beyond its failure to provide information, IRC has refused to comply with Plaintiff's request that it cease the resettlement of refugees from Syria until a joint effort (by Plaintiff, federal Defendants, IRC, and other Volags) permitted the "implement[ation] of Governor Abbott's efforts to keep our doors open to refugees while at the same time keeping Texans secure." Doc. 13-5. Indeed, Plaintiff's contractual provisions with IRC involve providing resettlement services to "eligible individuals." Doc. 13-9, 13-10. Yet, Plaintiff is attempting to have its say in the conversation of who is, or is not, an "eligible individual." And in accordance with the statutory requirement that the "recommendations of the State" shall be taken into account "to the maximum extent possible," there remains an outstanding question on who is an "eligible individual" for purposes of Plaintiff's contractual relationship with IRC. However, notwithstanding Plaintiff's concerns and contractual rights, IRC continues to willingly participate in the resettlement of refugees from Syria since the filing of Plaintiff's Complaint.

Finally, IRC's construction of applicable federal statues does not support a dismissal. IRC expresses its opinion about the requirements of 8 U.S.C. § 1522(a), claiming that nothing in the language of the statute "requires IRC to provide any refugee-specific information." Doc. 43 at 5. But nothing within the text of the law prohibits the very sharing of information sought by Plaintiff. And IRC's nearsighted view of 8 U.S.C. § 1522 runs contrary to how Congress envisioned its application.

If there is fixed star in refugee law, it is one of constant change and flexibility

so that the challenges of the day may be met. *See* Doc. 57 at 1-8. Congress overhauled refugee law in 1980 in order to make the framework more malleable and responsive to the various challenges and crises that would arise. In addition to mandating federal cooperation with state and local officials, Congress has twice amended the law to require acquiescence to state preferences and concerns "to the maximum extent possible." 8 U.S.C. § 1522(a)(2)(D).

Specifically, Congress expressed the need for "greater coordination between the Federal Government, state and local governments, and voluntary agencies in the placement and resettlement of refugees," H.R. Rep. No. 99-132, at 7 (1985), and that consultations occur "*before* [the] placement [of refugees] in those States and localities." 8 U.S.C. § 1522(a)(2)(A) (emphasis added). While IRC chooses to limit the scope of applicable law to "benefit programs," Doc. 43 at 6, the plain language of the statute has no such limitation. Indeed, limiting the cooperation and consultation requirements to mere questions of financial benefits would subvert the will of Congress that consultative "meetings are meaningful and productive and provide an *opportunity for expansion of the concerns on the part of state and local officials* and a free exchange of views between these officials and voluntary agency representatives." S. Rep. No. 97-638, at 9 (1982) (emphasis added); H.R. Rep. No. 97-541, at 12 (1982).

While terrorism may not have been foremost in the mind of Congress when enacting and amending refugee law, it is for exactly this type of unforeseen circumstance that the law was drafted the way that it was—flexible and envisioning high levels of cooperation and collaboration.

> With respect to the location of placement of refugees within a State, the Federal agency . . . shall, consistent with such policies and strategies and to the maximum extent possible, take into account recommendations of the State.

8 U.S.C. § 1522(a)(2)(D). Here, of course, the "recommendations" of the State of Texas are largely that those claiming "refugee" status from a region controlled largely by terrorists, where reliable databases and other means to vetting claimants do not exist, not be settled within its sovereign borders.

Of course, as a one possessing both a contractual and fiduciary relationship with Plaintiff, the "recommendations" of the State of Texas should be paramount to IRC. But contrary to notions of cooperation, consultation, and working to accommodate the desires of the State of Texas, IRC has done nothing to even remotely accommodate or adhere to Texas' "recommendations." IRC cannot dispute is that it has wholly refused to cooperate in achieving Texas' "recommendations," nor has it provided any of the information about specific refugees—something it is under a perpetual duty to provide.

## III. FEDERAL LAW DOES NOT IMPEDE IRC'S CONTRACTUAL DUTIES.

As briefly addressed in Plaintiff's Reply in Support of Amended Application for Preliminary Injunction (Doc. 57), federal law does not impact IRC's contractual duties as to this dispute. Here, IRC contends that 8 C.F.R. § 208.6 prohibits it from "sharing information about individual refugees." IRC Mot. to Dismiss (Doc. 43) at 7. However, by its own terms, § 208.6 applies to asylees, not refugees.

To be clear, an effort exists to extend the application of § 208.6 to refugees through a "fact sheet" issued by the Department of Homeland Security (DHS) on Oct.

18, 2012. *See* Fact Sheet: Federal Regulation Protecting the Confidentiality of Asylum Applicants, at 2-3, 4, and 7, identified as Exhibit B to the Declaration of Janet Napolitano (Doc. 44-1) at 7-14. Within the "fact sheet," the Asylum Division of the United States Citizen and Immigration Services (USCIS) of DHS concludes that:

> Because refugee applicants face similar negative consequences when their information is disclosed to a third party, *as a matter of policy*, USCIS extends the same protections outlined in 8 CFR 208.6 to refugees.

*Id*. at pp. 2-3, 7 (emphasis added). However, not only does a "fact sheet" not constitute "federal law," but the policy preference of the Asylum Division of USCIS cannot substitute for a clear statement by Congress, or properly enacted regulations codified in the Code of Federal Regulations. Moreover, this Court should not lend weight to the preference of USCIS. As explained, *infra*, the circumstances supporting the confidentiality of an asylum applicant differ from those of a refugee. And this is especially so here where the Refugee Act of 1980 specifically contemplates a robust sharing of information and cooperation—the very antithesis of confidentiality.

The decision of USCIS to extend 8 C.F.R. § 208.6 to refugees is not an agency interpretation of a vague grant of Congressional authority or unclear regulation. Section 208.6 is clear that it applies only to "asylum application[s]," as well as the "fear determination[s]" that are unique only to asylum applicants. 8 C.F.R. § 208.30-208.31; *Lin v. U.S. Dep't of Justice*, 459 F.3d 255, 268 (2d Cir. 2006) ("The regulation is unambiguously absolute"). Thus, applying 8 C.F.R. § 208.6 to refugees is improper.

Even if 8 C.F.R. § 208.6 was vague, agency interpretations in fact sheets and the like "lack the force of law" and are only "entitled to respect." *Christensen v. Harris*

*Cnty.*, 529 U.S. 576, 586-87 (2000) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). "Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant Chevron-style deference." *Id*. (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).

Finally, the differences between asylum applicants and regular refugees belie a blanket application of the confidentiality policy beyond its plain text, especially in the context of (a) the cooperation and information sharing envisioned by the Refugee Act of 1980 and the contract between the Plaintiff and IRC, and (b) the ongoing security concerns associated with our refugee program. Asylum applicants are a subset of refugees that have already entered the United States illegally and seeking permission to stay. *See*, generally, https://www.uscis.gov/humanitarian/refugees-asylum. The question to be answered for any asylum applicant is whether there is a "reasonable" or "credible" fear of persecution or torture should they not be allowed to stay and be directly returned (against their will) to their country of origin. *See* 8 C.F.R. § 208.30-208.31.

Those looking to enter into the United States through the refugee process do not face an imminent determination that may force them back to the country from which they've fled. They are not seeking to avoid deportation from the U.S., but are looking to lawfully emigrate into the U.S. They have already moved away from the location of their persecution to a safer location and are unwilling to return (temporarily or permanently). Certainly, a particular refugee could possess a

"reasonable" or "credible" fear tantamount to that of an asylum applicant. However, the threat associated with the deportation of an asylum applicant, who has no control over where they will and will not go next, is unique. *See*, *e.g.*, *Lin*, 459 F.3d at 268 ("The government through its negligence has potentially exposed Lin [the high-profile leader of the pro-democracy movement in China] and his family to risks beyond those that he claims caused him to flee China."). While the individual circumstances of an asylum applicant may warrant confidentiality, their status is materially different from maintaining the anonymity of millions of refugees fleeing civil unrest. Any refugee, unlike an asylum applicant, is free to return to their country or origin, try to move elsewhere, or otherwise cultivate multiple immigration options. Their imminent fate is simply not akin to that of an asylee.

Though not cited in its Motion to Strike, 8 U.S.C. § 1202(f) was cited by the federal Defendants as additional federal law grounds for confidentiality of the information sought by Plaintiffs. Doc. 46 at 9 n.1. But § 1202(f), titled "Application for visas," applies to just that—the issuance or denial of a visa. Refugees, if approved for entry, do not receive a visa. *See* Doc. 57 at 8. Even if § 1202(f) were somehow applicable to the entrance of refugees, it would not preclude the person-specific information sought by Plaintiff from IRC. This is because the statute contains an express exception, providing that "records . . . shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States." 8 U.S.C. § 1202(f). Certainly, the extant dispute involves the "formulation, amendment, administration, or enforcement" of the

Refugee Act of 1980 and, thus, renders inapplicable notions of confidentiality here. And because § 1202(f) does not apply to refugees, IRC cannot circumvent its contractual obligations to Plaintiff by incorporating the provisions of § 1202(f) into its "Award Provisions" agreement with the federal Defendants. *See* Fed. Defs.' Opp. to Pl.'s TRO, Ex. B at 26 (Doc. 5-1).

**CONCLUSION**

Texas's demands for information from IRC are specific and ongoing, as is IRC's contractual duty to not "limit[ Plaintiff]'s right of access to recipient case records or other information relating to clients served under this contract." No applicable provision of federal law permeates, or otherwise mitigates, IRCs duties. Therefore, IRC's motion to dismiss should be denied.

Dated: January 25, 2016.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

<u>/s/ Austin R. Nimocks</u>
AUSTIN R. NIMOCKS
Associate Deputy Attorney General for Special Litigation
Texas Bar No. 24002695

ANGELA V. COLMENERO
Division Chief – General Litigation

ADAM N. BITTER
Assistant Attorney General

General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I certify that a copy of this pleading was served on all counsel of record listed below via e-mail and/or through this Court's CM/ECF system:

Stuart J. Robinson
Michelle R. Bennett
Trial Attorneys
United States Department of Justice
Civil Div., Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
stuart.j.robinson@usdoj.gov

*Attorneys for the Federal Defendants*

Rebecca L. Robertson
Adriana Piñon
Satinder Singh
**American Civil Liberties Union**
**Foundation of Texas**
1500 McGowan, Suite 250
Houston, TX 77004
rrobertson@aclutx.org
apiñon@aclutx.org
ssingh@aclutx.org

Cecillia D. Wang
**American Civil Liberties Union Foundation**
**Immigrants' Rights Project**
39 Drumm Street
San Francisco, CA 94111
cwang@aclu.org

Omar C. Jadwat
Judy Rabinovitz
Michael K.T. Tan
**American Civil Liberties Union Foundation**
125 Broad Street
New York, New York 10004
ojadwat@aclu.org
jrabinovitz@aclu.org
mtan@aclu.org

Kristi L. Graunke
Michelle Lapointe
**Southern Poverty Law Center**
1989 College Avenue NE
Atlanta, GA 30317
kristi.graunke@splcenter.org
michelle.lapointe@splcenter.org

Karen C. Tumlin
**National Immigration Law Center**
3425 Wilshire Blvd., Ste. 2850
Los Angeles, CA 90010
tumlin@nilc.org

Robert Rivera, Jr.
Terrell W. Oxford
Neal Manne
Vineet Bhatia
Shawn L. Raymond
Robert S. Safi
Stephen Shackelford
SUSMAN GODFREY, LLP
1000 Louisiana St., Suite 5100
Houston, Texas 77002
rrivera@susmangodfrey.com
toxford@susmangodfrey.com
nmanne@susmangodfrey.com
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com
rsafi@susmangodfrey.com
sshackelford@susmangodfrey.com

*Attorneys for Defendant International Rescue Committee, Inc.*

/s/ Austin R. Nimocks
AUSTIN R. NIMOCKS
Attorney for Plaintiff