IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEXAS HEALTH AND HUMAN SERVICES COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-3851-N |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

This Order addresses Plaintiff Texas Health and Human Services Commission's (the "Commission") amended application for preliminary injunction against Defendant International Rescue Committee, Inc. ("IRC") and the Federal Defendants[1] [17]. Because the Commission has failed to establish a substantial threat of irreparable injury and because the applicable statutes do not contemplate a judicial remedy, the Court denies the application.

## I. INTRODUCTION

Federal district courts are "courts of limited jurisdiction. They possess only that power authorized by Constitution and statute."[2] While perhaps not technically within the

[1]The Federal Defendants are: the United States of America, the United States Department of State, John Kerry in his official capacity as Secretary of State, the United States Department of Health & Human Services, Sylvia Burwell in her official capacity as Secretary of Health & Human Services, Office of Refugee Resettlement, and Robert Carey in his official capacity as Director of the Office of Refugee Resettlement.

[2]*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co.* , 511 U.S. 375, 377 (1994)).

reach of the political question doctrine,[3] this case presents a litany of political questions, including: (1) the legislative branch's commitment to the executive of determining the number of refugees to admit in any given year; (2) the executive branch's administration of foreign policy in determining, in conjunction with the international community, our country's share of shouldering the burden of refugees; (3) the executive branch's exercise of its national security duties in determining which refugees to admit; and (4) the federalism and separation of powers issues inherent in the federal legislative instruction to the federal executive to consult with the states on refugee resettlement. Somewhat ironically, Texas, perhaps the reddest of red states, asks a federal court to stick its judicial nose into this political morass, where it does not belong absent statutory authorization. Finding no such authorization, this Court will leave resolution of these difficult issues to the political process. *See Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention.").

**II. NO SUBSTANTIAL THREAT OF IRREPARABLE INJURY**

To secure a preliminary injunction, the Commission bears the burden of establishing:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

---

[3] *See, e.g.*, *Zivotofsky ex rel. Zivotofsky v. Clinton*, 132 S. Ct. 1421 (2012) (political question doctrine precludes judicial disposition of a question committed to one of the other branches or when there are no judicially discoverable and manageable standards for resolving it). The question presented here of how much consultation is enough probably falls within the second part of that definition.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (internal quotation marks and citation omitted). To establish irreparable injury, the Commission must demonstrate that the harm is "real, imminent, and significant – not merely speculative or potential – with admissible evidence and a clear likelihood of success." *Aquifer Guardians in Urban Areas v. Fed. Highway Admin.*, 779 F. Supp. 2d 542, 574 (W.D. Tex. 2011) (internal quotation marks and citations omitted). The Commission originally contended that there is a substantial threat of irreparable harm here because (1) the resettlement of Syrian refugees in Texas will jeopardize the security of Texas citizens, and (2) the IRC has breached its contract with the Commission, which stipulates that any breach constitutes irreparable harm. The Court previously denied the Commission's second application for a temporary restraining order [18] because the Commission "failed to establish by a preponderance of the admissible evidence that there is a substantial threat of irreparable injury." Order 2, December 9, 2015 [19]. The Commission now offers additional evidence in its reply brief to attempt to address those deficiencies.[4]

The Commission's principal new evidence is the Supplemental Declaration of Robert J. Bodisch. It to some degree cures the problem of unauthenticated evidence, but it does not

[4]The Court notes that offering new evidence in a reply brief is improper and that the Court specifically instructed the Commission not to do that. The practical reality is that if the Court struck the additional evidence, the Commission would simply have to file a new application for preliminary injunction with the new evidence. While there would be some satisfaction in requiring the Commission to play by the same rules as all other litigants, the only practical consequence is that the Court would end up two months down the road addressing the same issues after the litigants had incurred substantial additional expense. The Court thus reluctantly denies defendants' motions to strike [59, 66] and grants the Federal Defendants' alternative motion for leave to file surreply.

otherwise cure the Commission's evidentiary deficiencies. The Supplemental Declaration probably qualifies Deputy Director Bodisch as an expert on terrorism and supports his opinion that refugees from Syria pose a greater risk than other refugees. He offers no evidence, however, from which the Court could determine that the risk is substantial. He establishes the arrests and/or indictment of two refugees on terrorism charges. Of course, the arrest or indictment of a defendant is not evidence of guilt. *See United States v. Williams*, 22 F.3d 580, 582 (5th Cir. 1994). There is no evidence from the investigating officers of the facts that might support a determination that the two defendants actually are terrorists. Finally, Deputy Director Bosisch proves the content of statements by other governmental officials. While that may cure the unauthenticated part of the "unauthenticated hearsay" problem, it does not cure the hearsay part of the problem.[5] The Court finds that the Commission's new evidence does not materially change the Court's prior analysis.

Thus, the Court is left with evidence only that Syrian refugees pose some risk. The Commission still fails "to show by competent evidence that any terrorists actually have infiltrated the refugee program, much less that these particular refugees are terrorists intent

[5]Courts may consider hearsay in determining an application for a preliminary injunction. *See, e.g.*, *Sierra Club v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993); 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2949, at 238–40 (2013). That does not necessarily make it persuasive.

on causing harm." Order 2, December 9, 2015 [19].[6] That is still insufficient to establish substantial risk of irreparable injury.

In its Reply Brief, the Commission argued for the first time that irreparable injury would arise from the loss of its statutory right to foreknowledge and from damage to its sovereign interests. Pl.'s Reply Br. 10–11 [57]. It appears that the Commission argues that (1) the statute gives it a right to consult, which gives it a right to advance information concerning the specific refugees to be resettled prior to resettlement; (2) the Federal Defendants are not providing the desired information; and (3) deprivation of the right to advance notice cannot be cured after the fact – because it would not then be *advance* notice – and thus is irreparable. This argument appears to equate likelihood of success on the merits with irreparable harm. It fails to show *how* the absence of advance notice irreparably harms the Commission. The Court finds this argument unpersuasive.

Finally, the Commission invokes a contractual clause between itself and the IRC as demonstrating irreparable harm. The Commission argues that its contract with the IRC provides that, in the event of any breach, "'the State will be irreparably harmed,'" and the IRC must "'not oppose the entry of an appropriate order compelling performance.'" Pl.'s Am. Appl. 12 [17] (quoting Ex. I, "HHSC Uniform Contract Terms & Conditions" 22 [17-

---

[6]The Court acknowledges receipt of communications from concerned citizens attempting to help the Commission carry its evidentiary burden, typically by pointing to stories on the Internet. While the Court appreciates the good intentions, the Court cannot consider that information. First, it is up to the Commission to present its own evidence. Second, stories on the Internet are typically inadmissible hearsay the Court would not consider in any event. Thus, the Court limits its review to the evidence brought forward by the Commission.

9]). The Court rejects the contention that a contractual stipulation between the parties is binding on the Court or can alone justify the imposition of a preliminary injunction – a form of extraordinary relief. *See Dickey's Barbecue Rests., Inc. v. GEM Inv. Grp., L.L.C.*, 2012 WL 1344352, at *4 (N.D. Tex. 2012).

A showing of irreparable harm is no less crucial in a request for a preliminary injunction than it is for a temporary restraining order. Because the Commission has not borne its burden of establishing a substantial threat of irreparable injury by competent evidence, the Court denies the amended application for a preliminary injunction.

## III. Likelihood of Success on the Merits

The Commission is unlikely to succeed on the merits because it has no viable cause of action against the Federal Defendants. The Commission brings two claims against the Federal Defendants: Count I is a claim for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, that the Federal Defendants have breached a statutory duty of advance consultation under the Refugee Act of 1980, 8 U.S.C. § 1522(a)(2)(A) (the "Refugee Act"). Count II is a claim for declaratory judgment under the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706, that the Federal Defendants' failure to consult is unlawful. Because neither the Refugee Act nor the APA creates a cause of action for the Commission to compel advance consultation regarding the resettlement of individual Syrian refugees in Texas, the Commission is unlikely to succeed on the merits.

***A. The Declaratory Judgment Act Provides a Remedy, Not a Cause of Action***

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Declaratory Judgment Act "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Thus, "the Declaratory Judgment Act alone does not create a federal cause of action." *Harris Cty., Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). To obtain relief under the Declaratory Judgment Act, the Commission must first identify a cause of action under some other law.

***B. The Refugee Act Does Not Confer a Cause of Action***

The Commission pleads that the Federal Defendants' conduct violates a portion of the Refugee Act that provides as follows:

> The Director and the Federal agency administering [a program of initial resettlement] shall consult regularly (not less often than quarterly) with State and local governments and private nonprofit voluntary agencies concerning the sponsorship process and the intended distribution of refugees among the States and localities before their placement in those States and localities.

8 U.S.C. § 1522(a)(2)(A); Pl.'s Am. Compl. 7 [13]. To succeed on its claim under the Declaratory Judgment Act, the Commission must show that the Refugee Act confers a cause of action to enforce section 1522(a)(2)(A) against the Federal Defendants.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* "[T]he right- or duty-creating language of the statute" is the most reliable indicator of congressional intent to create a cause of action. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690 n.13 (1979). The Supreme Court has previously implied causes of action "where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case." *Id.* (collecting cases). "Conversely, it has noted that there 'would be far less reason to infer a private remedy in favor of individual persons' where Congress, rather than drafting the legislation 'with an unmistakable focus on the benefited class,' instead has framed the statute simply as a general prohibition or a command to a federal agency." *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 772 (1981) (quoting *Cannon*, 441 U.S. at 690–92).

Section 1522(a)(2)(A) does not contain an express provision conferring a cause of action, nor does it contain the kind of rights-creating language necessary to infer one. Section 1522(a)(2)(A)'s directive that the Director and administering agency "shall consult regularly" with the States does not confer any rights directly on the States. Rather, the statute is simply a command to a federal agency regarding the administration of a federal benefits program. Because the statute is "phrased as a directive to [a] federal agenc[y] engaged in the disbursement of public funds," its language does not convey a congressional intent to create a cause of action. *Cannon*, 441 U.S. at 693 n.14; *see also Coutu*, 450 U.S. at 771–72

(holding that a statute specifying that federal construction contracts "shall contain" certain clauses regarding minimum wages did not confer a cause of action).

Without a congressional intent to create a private remedy, "a cause of action does not exist and courts may not create one." *Sandoval*, 532 U.S. at 286–87. Because the Refugee Act does not provide a cause of action for the Commission to enforce its provisions, the Commission is unlikely to succeed on the merits of its claim for a declaratory judgment under the Declaratory Judgment Act.

***C. The Commission Has No Cause of Action Under the APA***

The Commission alleges that the Federal Defendants have failed to fulfill their statutory duty of advance consultation. Pl.'s Am. Compl. 7–8. The Commission asks the Court to "compel agency action unlawfully withheld or unreasonably delayed" pursuant to the APA, 5 U.S.C. § 706(1).

The APA allows suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §§ 551(13), 701(b)(2). The term "failure to act" means "a failure to take one of the agency actions (including their equivalents)" delineated in section 551(13). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original).

The Refugee Act's requirement that the Federal Defendants "shall consult regularly (not less often than quarterly)" with the Commission "before" the resettlement of refugees in Texas, 8 U.S.C. § 1522(a)(2)(A), does not contemplate discrete agency action. Regular advance consultation is not a rule, order, license, sanction, or relief within the meaning of section 551. Rather, the Refugee Act's advance consultation requirement is best understood as an ongoing, dynamic process. This aspect of agency work is not the kind of discrete agency action reviewable by federal courts. *See Fund for Animals, Inc. v. BLM*, 460 F.3d 13, 19–20 (D.C. Cir. 2006) ("Much of what an agency does is in anticipation of agency action. Agencies prepare proposals, conduct studies, meet with members of Congress and interested groups, and engage in a wide variety of activities that comprise the common business of managing government programs.").

Because the Commission is not challenging any discrete agency action, the Commission is unlikely to succeed on the merits of its claim under the APA.

## CONCLUSION

The Court does not deny that the Syrian refugees pose some risk. That would be foolish. In our country, however, it is the federal executive that is charged with assessing and mitigating that risk, not the states and not the courts. It is certainly possible that a Syrian refugee resettled in Texas could commit a terrorist act, which would be tragic. The Court, however, cannot interfere with the executive's discharge of its foreign affairs and national security duties based on a possibility of harm, but only on a proper showing of substantial threat of irreparable injury and a legal right to relief. The Commission, again, has failed to

carry its burden. The Court therefore denies the amended application for preliminary injunction.

Signed February 8, 2016.

David C. Godbey
United States District Judge