IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TEXAS HEALTH AND HUMAN SERVICES COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 3:15-cv-03851-N ) |
| UNITED STATES OF AMERICA, et al., | ) ) |
| Defendants. | ) ) ) ) ) |

**DEFENDANT INTERNATIONAL RESCUE COMMITTEE'S
REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

    I.    HHSC's Pleadings Fail To State a Breach of Contract Claim. ........................................ 1

    II.    HHSC Fails to Rebut IRC's Legal Analysis of the Contracts and Statutes ...................... 3

    III.    HHSC's Arguments About Federal Confidentiality Requirements Are Based on Fundamental Mistakes About Basic U.S. Refugee and Asylum Law. ............................. 6

        A.    HHSC's Breach of Contract Claim Is Directly Contrary to the Governing Federal Agency's Position on Confidentiality ....................................................... 6

        B.    HHSC's Efforts To Distinguish 8 C.F.R. § 208.6 and 8 U.S.C. § 1202(f) Are Based on Fundamental Misunderstandings of Refugee and Asylum Law .......................... 8

CONCLUSION ...................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Lin v. U.S. Dept. of Justice*, 459 F.3d 255 (2d Cir. 2006) ............................................................. 9

*Short v. Conn. Cmty. Bank, N.A.*, No. 3:09-CV-1955, 2012 WL 1057302
    (D. Conn. Mar. 28, 2012) ........................................................................................................ 7

*United States v. Kaluza*, 780 F.3d 647 (5th Cir. 2015) ................................................................. 4

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ...................................................................... 7

**Federal Statutes**

8 U.S.C. § 1101(a)(42) .................................................................................................................. 8

8 U.S.C. § 1103(a). ....................................................................................................................... 7

8 U.S.C. § 1157(c). ....................................................................................................................... 8

8 U.S.C. § 1158(a)(1) .................................................................................................................... 9

8 U.S.C. § 1158(b)(1)(B)(i). .......................................................................................................... 8

8 U.S.C. § 1202(f) ................................................................................................................... 6, 10

8 U.S.C. § 1225(b)(1) ................................................................................................................... 9

8 U.S.C. § 1231(b)(3) ................................................................................................................... 9

8 U.S.C. § 1522(a) .................................................................................................................... 4, 6

**Federal Regulations**

8 C.F.R. § 207.1 ............................................................................................................................ 8

8 C.F.R. § 208.2 ............................................................................................................................ 9

8 C.F.R. § 208.31 .......................................................................................................................... 9

8 C.F.R. § 208.6 ..................................................................................................................... 6, 10

8 C.F.R. § 241.8 ............................................................................................................................ 9

8 C.F.R. § 1208.30 ........................................................................................................................ 9

**Other Authorities**

H.R. Rep. No. 97-541 (1982) ............................................................................................... 5

H.R. Rep. No. 99-132 (1985), *as reprinted in* 1986 U.S.C.C.A.N. 5857 ........................................ 5

S. Rep. No. 97-638 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 3348 ........................................... 5

USCIS Guidance, http://www.uscis.gov/sites/default/files/USCIS/Outreach/Notes%20from%20
    Previous%20Engagements/2012/December%202012/Asylum-Confidentiality
    FactSheet.pdf. ........................................................................................................... 6, 8, 10

U.S. State Department Fact Sheet, http://www.state.gov/j/prm/releases/factsheets/
    2013/210135.htm ............................................................................................................... 10

EOIR Fact Sheet, http://www.justice.gov/sites/default/files/eoir/legacy/2009/01/23/Asylum
    Withholding CATProtections.pdf ........................................................................................ 8, 9

# INTRODUCTION

Plaintiff Health and Human Services Commission ("HHSC") brought this lawsuit seeking to block the resettlement of Syrian refugees in Texas. *See* Am. Compl. (Doc. 13) at 10-14; Doc. 17. But HHSC's sole claim against Defendant International Rescue Committee ("IRC") is for breach of the HHSC-IRC contracts governing IRC's provision of services and benefits to refugees already resettled in Texas. Recognizing that there is nothing in the contracts that would permit either HHSC or IRC to stop the resettlement of refugees—because that power is in the hands of the federal government—HHSC's amended complaint alleges only that IRC failed to respond to HHSC's requests for information. Am. Compl. ¶¶ 30-38. As set forth in IRC's motion to dismiss, HHSC's allegations do not add up to a cause of action and HHSC's opposition does nothing to salvage the claim. The sole claim against IRC should be dismissed.

# ARGUMENT

## I.   HHSC's Pleadings Fail To State a Breach of Contract Claim.

One independent ground on which IRC moved to dismiss HHSC's breach-of-contract claim is that HHSC failed to allege with any specificity what information HHSC demanded and IRC failed to provide in breach of the contracts. IRC Br. in Support of Mot. To Dismiss ("IRC Br.") at 4-5. In response, HHSC lists five points purportedly describing its "informational and program-related demands upon IRC." Pl.'s Resp. to Mot. To Dismiss ("Opp.") at 1-2. But HHSC's response merely demonstrates that HHSC failed to state a claim against IRC.

In points (1) and (2), HHSC alleges that in a November 19, 2015 letter, it asked IRC to consult about planned resettlements of refugees in Texas, and to notify HHSC of any such plans. *Id.* at 1. But the Amended Complaint acknowledges that *IRC complied with HHSC's request*. *See* Am. Compl. ¶ 14 ("In a phone call between the staff for the Committee and the Commission

1

[following the Commission's November 19 letter], the Committee informed the Commission that it intends to resettle six Syrian refugees in Dallas, Texas on Friday, December 4.").

In points (3) and (4), HHSC notes that it asked IRC to halt any further resettlement of Syrian refugees in Texas. Opp. at 1 (quoting Am. Compl., Ex. A, C). But these demands do not pertain to HHSC's breach-of-contract theory, which is based on IRC's alleged failure to provide information (*see* IRC Br. at 2-3).[1] The Amended Complaint does not plead any claim against IRC based upon a failure to comply with HHSC's request to stop resettling Syrian refugees.[2]

In point (5), HHSC identifies information which it contends IRC should have disclosed: "[a]ll demographic, medical, security, and other case information relating to Syrians slated or scheduled for resettlement in Texas." Opp. at 2 (quoting Am. Compl., Ex. B). But HHSC's own pleading shows it demanded this information *from a federal agency* (the Bureau of Population, Refugees, and Migration at the U.S. State Department), not IRC. Am. Compl., Ex. B. Moreover, in a letter sent to IRC on the same day, HHSC did *not* request the same information from IRC; to the contrary, HHSC told IRC "we have asked the Department of State to provide the State with all information relating to Syrians slated or scheduled for resettlement in Texas during the next ninety days." Am. Compl., Ex. H. IRC cannot fairly be accused of breach of contract for failing to provide information that HHSC told IRC it was seeking elsewhere.

---

[1] To the extent HHSC points to the sentence in its November 25, 2015 letter that "urge[s] . . . cooperat[ion] with the State of Texas," Opp. at 1 (citing Doc. 13-5), that allegation is too vague to make out a claim for breach of contract. Moreover, as the Amended Complaint (at ¶ 16) and its attachments clearly demonstrate, IRC responded promptly to that request for "cooperation" and repeatedly proposed a meeting. Am. Compl., Ex. D (Doc. 13-6), Ex. I (Doc. 13-8).

[2] Even if HHSC were to amend its pleading to include a failure-to-stop-resettlement theory as part of its breach-of-contract claim against IRC, there is no contractual provision that would support such a claim, and such a claim would be contrary to federal law. *See* Doc. 44 at 15-21.

2

In summary, HHSC has failed to point to any specific allegations in the Amended Complaint that make out a breach of contract. Indeed, the Amended Complaint and its attachments demonstrate that IRC promptly and properly responded to all of HHSC's requests.

**II.      HHSC Fails to Rebut IRC's Legal Analysis of the Contracts and Statutes.**

In its Opposition, HHSC *entirely ignores* several of IRC's key legal arguments:

- The language from 8 U.S.C. § 1522 that is cited by HHSC is merely hortatory. IRC Br. at 5-6.

- Other subsections of 8 U.S.C. § 1522 require IRC to disclose specific types of information about individual refugees to a state agency, further undermining HHSC's attempt to read the generalized "cooperate" and "consult" language in section 1522(a)(1)(B)(iii) as requiring IRC to provide HHSC with whatever refugee-specific information HHSC demands. IRC Br. at 7-8.

- HHSC's Records Clause Contract Theory only pertains to HHSC's access to records for the purpose of auditing funds spent for refugees *already* resettled in Texas, not those who have not yet been resettled. IRC Br. at 8-9.

These unrebutted arguments demonstrate that HHSC's breach-of-contract theory fails both on the plain language of the contract and the plain language of the applicable federal law.

Where HHSC does attempt to respond to issues raised by IRC, its arguments fail. In response to IRC's argument that HHSC cannot rely upon 8 U.S.C. § 1522(a)(1)(B)(iii) as requiring the disclosure of individual refugees' information, HHSC's only retort is that "nothing within the text of the law prohibits the very sharing of information sought by Plaintiff." Opp. at 3. HHSC forgets that it raised § 1522(a) in an attempt to establish an affirmative disclosure requirement. It now admits that there is no such requirement, which is fatal to its claim.

HHSC offers a new argument that the contracts refer to the provision of services to "eligible individuals" and that HHSC therefore should "have a say in the conversation of who is, or is not, an 'eligible individual.'" But HHSC fails to point to any language in the contract that even defines the term "eligible individual," much less any language suggesting that the term

3

"eligible individual" somehow permits HHSC (1) to determine eligibility; (2) to demand that IRC disclose individual-specific information that is confidential under federal law; and (3) to hold IRC in breach of contract for failure to provide such information. The contract's mere use of the term "eligible individual" does not bear the weight HHSC attempts to give it.

HHSC also offers a new statutory argument that 8 U.S.C. § 1522(a)(2)(D) requires IRC to take into account the state's recommendations. Opp. at 4-6. That argument fails on the plain terms of § 1522(a)(2)(D), which reads in its entirety: "With respect to the location of placement of refugees within a State, the Federal agency administering subsection (b)(1) of this section shall, consistent with such policies and strategies and to the maximum extent possible, take into account recommendations of the State." Thus, the statute patently applies to "the Federal agency," and not to private resettlement agencies like IRC. In addition, the statute plainly refers to decisions about the distribution of refugees "*within* a State," not whether they should be resettled in the state at all.[3] Section 1522(a)(2)(D) does not give a state the power that HHSC claims here, and it imposes no duties at all on resettlement agencies like IRC.

Seeking further support for its arguments, HHSC refers to "constant change and flexibility" in refugee law, relying on legislative history. Opp. at 3-5. The Court should reject this elaborate yet vague effort to deflect attention from the plain language of § 1522. *See*, *e.g.*, *United States v. Kaluza*, 780 F.3d 647, 658-59 (5th Cir. 2015) (courts should look to legislative

---

[3] The "policies and strategies" mentioned in § 1522(a)(2)(D) are a cross-reference to § 1522(a)(2)(C), which include resource-related factors such as: the availability of housing, employment, and social services; "the likelihood of refugees placed in the area becoming self-sufficient and free from long-term dependence on public assistance"; and the presence of refugees' family members who already live in the area. *Id.* § 1522(a)(2)(C). Thus, the consultation provision in § 1522(a)(2)(D) is fully consistent with IRC's interpretation of the rest of § 1522 and the HHSC-IRC contracts, which limit IRC's and HHSC's role in refugee resettlement to the provision and allocation of benefits and services.

history for interpretive assistance only if the plain language is ambiguous) (citation and quotation marks omitted). HSSC does not identify any textual ambiguity in § 1522, and there is none.

Moreover, the legislative history of § 1522 actually undermines HHSC's position by reinforcing what is evident from the statute's plain text: Congress wanted the federal government to consider the states' views *as to resource allocation issues*, but never intended to give states the ability to veto the federal government's resettlement plans. *See* H.R. Rep. No. 97-541, at 11-12 (1982) (Doc. 57-4) (noting, in support of amendment to provide for state consultation, that states receiving large numbers of refugees had "severely strained social service networks" which "hindered the achievement of self-sufficiency in many [refugees'] cases" and that state officials in those areas "sharply criticize[d] the Federal Government for its failure to consult with them on refugee placement decisions"); S. Rep. No. 97-638 at 8-9 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 3348, 3356-57 (same); H.R. Rep. No. 99-132 at 19 (1985), *as reprinted in* 1986 U.S.C.C.A.N. 5857, at 5870 (noting continued complaints by states about unequal distribution of resource burdens and adding § 1522(a)(2)(C)(iii) to enumerate resource-focused factors on which states should be consulted).

Most notably, in the legislative history on the consultation requirements of 8 U.S.C. § 1522, Congress "emphasize[d] that *these requirements are not intended to give States and localities any veto power over refugee placement decisions*, but rather to ensure their input into the process and to improve their resettlement planning capacity." H.R. Rep. No. 99-132, at 19 (emphasis added); *see also* H.R. Rep. No. 97-541, at 10 (Doc. 57-4) ("The decision to admit a refugee is a federal decision.").

5

### III. HHSC's Arguments About Federal Confidentiality Requirements Are Based on Fundamental Mistakes About Basic U.S. Refugee and Asylum Law.

In attempting to evade the clear federal laws imposing confidentiality requirements on IRC,[4] HHSC attempts two legal theories. First, HHSC contends that this Court should ignore the federal agency guidance applying 8 C.F.R. § 208.6 to admitted refugees as well as to asylum applicants. Second, HHSC contends that asylum applicants and admitted refugees are distinct categories and that there is no reason to protect the latter from disclosure of personal information relating to their refugee status. Both of these arguments betray HHSC's fundamental misunderstanding of the applicable federal law, and the Court should reject them entirely.

### A. HHSC's Breach of Contract Claim Is Directly Contrary to the Governing Federal Agency's Position on Confidentiality.

The issue before the Court is one of contract interpretation: To the extent the contract provisions at issue in HHSC's lawsuit are ambiguous and could possibly be construed to require IRC to disclose the demanded information,[5] the Court should construe the contract to be consistent with federal law. *See* IRC Br. at 7 (citing cases). In addition to 8 C.F.R. § 208.6 and 8 U.S.C. § 1202(f), both the USCIS "fact sheet" guidance ("USCIS Guidance") that expressly applies 8 C.F.R. § 208.6 to admitted refugees,[6] and the U.S. State Department's specific instruction to IRC that it should not disclose the demanded information, *see* Am. Compl., Ex. B at 1 (Doc. 13-4), reinforce the point that HHSC's construction of the contract is contrary to federal law.

---

[4] HHSC's interpretation of the contract, to require disclosures only about *Syrian* refugees, also violates the nondiscrimination provision of 8 U.S.C. § 1522(a)(5). *See* Doc. 44 at 16.

[5] As IRC explained in its moving papers, the contract provisions are not, in fact, ambiguous and clearly do not require the disclosures demanded by HHSC.

[6] *See* Doc. 44-1, Ex. B; *also available at* http://www.uscis.gov/sites/default/files/USCIS /Outreach/Notes%20from%20Previous%20Engagements/2012/December%202012/Asylum-ConfidentialityFactSheet.pdf.

In response, HHSC attacks USCIS's guidance, arguing that it is not owed any deference (while acknowledging it is "entitled to respect"). Opp. at 6 (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 586-87 (2000); *Skidmore v. Swift & Co.*, 323 U.S. 134, 138 (1944)). HHSC is wrong. As an initial matter, the deference question is beside the point. Even if the Court were to give the agency guidance no deference, and to interpret the relevant regulations differently, it still would be improper to hold IRC accountable for a breach of contract when it followed the governing federal agency's guidance and, indeed, its explicit directions.[7] Moreover, under the controlling standard, which HHSC fails to cite, the Supreme Court held that even when *Chevron* deference does not apply, an agency's "administrative practice in applying a statute" may still be owed deference. *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). When "Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute *or fills a space in the enacted law* . . . a reviewing court has no business rejecting an agency's exercise of its generally conferred authority." *Id.* at 229 (emphasis added).

Under *Mead Corp.*, in deciding whether to defer to the USCIS Guidance on 8 C.F.R. § 206.8, the court should look to "the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." 533 U.S. at 228. Those considerations are satisfied in this case. First, Congress has explicitly delegated to the Department of Homeland Security "the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a). Second, the subject matter of the regulation and the USCIS Guidance—how to implement the refugee and asylum process—is squarely within that express statutory delegation. Third, the USCIS

---

[7] *See Short v. Conn. Cmty. Bank, N.A.*, No. 3:09-CV-1955, 2012 WL 1057302, at *7, nn.10 & 17 (D. Conn. Mar. 28, 2012) (in contract dispute, taking judicial notice of and finding relevant a federal agency "bulletin" because it was a public record and expert witness relied upon it).

7

Guidance sets out the reasons the confidentiality requirement should apply to refugees as well as to asylum applicants: the severe risks that apply to both in the event of disclosure, and the need to protect the integrity of the U.S. asylum and refugee admissions system.[8] And, in doing so, the USCIS Guidance applies the agency's experience and expertise in administering that system. Thus, under the *Mead Corp.* test, the Court should defer to the USCIS Guidance.

### B. HHSC's Efforts To Distinguish 8 C.F.R. § 208.6 and 8 U.S.C. § 1202(f) Are Based on Fundamental Misunderstandings of Refugee and Asylum Law.

HHSC makes several other misguided arguments in attempting to set aside the confidentiality requirements in 8 C.F.R. § 208.6 and 8 U.S.C. § 1202(f). First, in trying to set aside 8 C.F.R. § 208.6, HHSC mistakenly asserts that "the differences between asylum applicants and regular [sic] refugees belie a blanket application of the confidentiality policy beyond its plain text . . . ." Opp. at 7. This argument misunderstands a basic foundation of U.S. refugee and asylum law: Both refugees admitted from outside the United States and asylees who have been granted asylum after entering the United States must establish that they meet the definition of "refugee" under 8 U.S.C. § 1101(a)(42). 8 U.S.C. §§ 1157(c), 1158(b)(1)(B)(i); 8 C.F.R. § 207.1.[9] Among other things, the individual must prove that he or she has a well-founded fear—not a "credible fear" or "reasonable fear"—of persecution on account of race, religion, nationality, political opinion, or membership in a particular social group.[10] *Id.* HHSC

---

[8] *See* USCIS Guidance at 1 (noting that § 208.6 protects against disclosure of information that could subject the claimant to retaliation if repatriated, or that could subject claimant's family members to retaliation, and against public disclosures that might "give rise to a plausible protection claim where one would not otherwise exist" by bringing the claimant to the attention of authorities in his home country) and 2 (stating that refugees face the same dangers).

[9] *See also* http://www.justice.gov/sites/default/files/eoir/legacy/2009/01/23/AsylumWithholding CATProtections.pdf ("EOIR Fact Sheet") at 2.

[10] HHSC mistakenly asserts that asylum applicants must meet a "'reasonable' or 'credible' fear of persecution" standard. Opp. at 7-8. As set forth above, asylum applicants and refugees admitted from abroad both must meet the definition of "refugee" under 8 U.S.C. § 1101(a)(42).

also tries to distinguish admitted refugees from asylum seekers by arguing that those who have already been admitted to the United States as refugees through processing outside the United States do not, by definition, potentially face imminent removal. Opp. at 8. It is true that *some* asylum applicants (*i.e.* those filing defensive asylum claims in ongoing removal proceedings) may be in that situation.[11] But this difference in circumstance has no bearing on USCIS's reasons for applying the confidentiality requirements. Individuals protected by the confidentiality requirement in 8 C.F.R. § 208.6—whether they are asylum applicants, asylees, or refugees admitted from abroad—have in common the possibility that they might return to their home country at some point, either voluntarily or through the removal process. Indeed, in the case cited by HHSC, *Lin v. U.S. Dept. of Justice*, 459 F.3d 255 (2d Cir. 2006), the Second Circuit noted that the purpose of § 208.6 is to prevent disclosures that would link an individual's identity with the fact that he or she has sought protection from the United States, and cited a Supreme Court case referring to the "refugee" status of those protected by the confidentiality provision. *Id.* at 263-64 (citing *U.S. Dep't of State v. Ray*, 502 U.S. 16, 502 U.S. 164, 175-76 (1991)).

---

The "reasonable fear" and "credible fear" standards apply in very limited circumstances, as an initial screening test for individuals facing the fast-track procedures for reinstatement of prior removal orders and expedited removal. *See* 8 U.S.C. § 1225(b)(1)(A)(ii), (b)(1)(B) (providing for credible fear interview as initial hurdle for seeking asylum in expedited removal proceedings); 8 C.F.R. § 1208.30 (same); 8 U.S.C. § 1231(b)(3) (individuals otherwise subject to reinstatement of prior removal order may not be removed if life or freedom would be threatened on enumerated grounds); 8 C.F.R. § 241.8 (individuals otherwise subject to reinstatement of prior removal order under 8 U.S.C. § 1231(a)(5) are referred for interview to determine whether they have a "reasonable fear" of torture or persecution); 8 C.F.R. § 208.31 (describing "reasonable fear" interview). *See generally* EOIR Fact Sheet at 4-5.

[11] HHSC mistakenly asserts that "[a]sylum applicants are a subset of refugees that have already entered the United States illegally and seeking [sic] permission to stay." Opp. at 7. In fact, individuals may apply for asylum whether they entered legally or illegally, and they may apply for asylum either defensively (while in removal proceedings) or affirmatively. 8 U.S.C. § 1158(a)(1); 8 C.F.R. § 208.2; *see also* EOIR Fact Sheet at 3.

9

HHSC also mistakenly asserts that the confidentiality provision of 8 U.S.C. § 1202(f) does not apply to refugees. Section 1202(f) plainly provides for confidentiality of "records . . . pertaining to the issuance or refusal of visas *or permits* to enter the United States." While refugees do not receive visas, they are given permits to enter and thus the confidentiality provision applies.[12] HHSC seeks precisely the information that § 1202(f) prohibits IRC from disclosing—documents relating to the federal government's decision to admit refugees. HHSC points to the statute's provision that such records "pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and *shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States . . . .*" *Id.* (emphasis added). But as IRC has briefed elsewhere, as a matter of law, the emphasized language refers to a function exclusively in the control of the federal government. Doc. 44 at 16-19. HHSC fails to point to any authority for the proposition that this language in 8 U.S.C. § 1202(f) gives a state agency the right to pierce the confidentiality of such federal records, contrary to the plain language of this statute, as well as the regulation at 8 C.F.R. § 208.6 and the accompanying USCIS Guidance, which specifically protect information that would link an individual to a claim of persecution against disclosure to state and local law enforcement agencies (Doc. 44-1 at 10-11).

In summary, HHSC's attempts to circumvent the confidentiality requirements of 8 C.F.R. § 208.6 and 8 U.S.C. § 1202(f) are based on a misunderstanding of federal asylum and refugee law, and its reading of its contracts with IRC is at odds with federal law.

---

[12] *See* http://www.state.gov/j/prm/releases/factsheets/2013/210135.htm (U.S. State Department fact sheet noting refugees do not receive visas but receive "documents . . . that allow[] them to enter the U.S.").

## CONCLUSION

HHSC's breach-of-contract claim against IRC should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Dated: February 8, 2016

Respectfully submitted,

/s/ Cecillia D. Wang
Cecillia D. Wang*
Nida Vidutis*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION IMMIGRANTS' RIGHTS
PROJECT
39 Drumm Street
San Francisco, CA  94111
Tel: (415) 343-0775
Fax: (415) 395-0950
Email: cwang@aclu.org

Omar C. Jadwat*
Judy Rabinovitz*
Michael K.T. Tan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION IMMIGRANTS' RIGHTS
PROJECT
125 Broad Street
New York, NY 10004
Tel.: (212) 549-2620
Fax: (212) 549-2654
Email: ojadwat@aclu.org
jrabinovitz@aclu.org
mtan@aclu.org

Neal Manne
State Bar No.: 12937980
Terrell W. Oxford
State Bar No.: 15390500
Robert Rivera, Jr.
State Bar No.: 16958030
Vineet Bhatia
State Bar No.: 00795976
Shawn L. Raymond
State Bar No.: 24009236
Robert S. Safi
State Bar No.: 24051280
SUSMAN GODFREY, LLP
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
Email: nmanne@susmangodfrey.com
toxford@susmangodfrey.com
rrivera@susmangodfrey.com
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com
rsafi@susmangodfrey.com

Rebecca L. Robertson
State Bar No.: 00794542
Adriana Piñon
State Bar No.: 24089768.
Satinder Singh
State Bar No.: 24093508
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF TEXAS
1500 McGowan Street, Suite 250
Houston, TX 77004
Tel.: (713) 942-8146
Fax: (713) 942-8966
Email: rrobertson@aclutx.org
apiñon@aclutx.org
ssingh@aclutx.org

Kristi L. Graunke*
Michelle Lapointe*
SOUTHERN POVERTY LAW CENTER
1989 College Avenue NE
Atlanta, GA 30317
Tel: (404) 521-6700
Fax: (404) 221-5857
Email: kristi.graunke@splcenter.org
michelle.lapointe@splcenter.org

Karen C. Tumlin*
Nicholas Espíritu*
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard
Suite 2850
Los Angeles, CA  90010
Tel: (213) 674-2850
Fax: (213) 639-3911
Email: tumlin@nilc.org
espiritu@nilc.org

Stephen Shackelford
State Bar No.: 24062998
SUSMAN GODFREY, LLP
560 Lexington Avenue, 15th Floor
New York, NY  10022
Tel:  (212) 336-8330
Fax:  (212) 336-8340
Email: sshackelford@susmangodfrey.com

Justin B. Cox*
LAW OFFICES OF JUSTIN B. COX
1989 College Avenue NE
Atlanta, GA 30317
Tel: (404) 594-2258
Email: cox@cox.legal

*Attorneys for Defendant International Rescue Committee, Inc.*
*Admitted *pro hac vice*

13

## CERTIFICATE OF SERVICE

I hereby certify the foregoing brief in support of motion to dismiss was served upon the parties via ECF notification.

/s/ Cecillia D. Wang
Cecillia D. Wang
