**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

---

|  |  |  |
|---|---|---|
| TEXAS HEALTH AND HUMAN SERVICES COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 3:15-cv-3851 (DCG) |
| v. | ) ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

---

**MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS' MOTION
TO DISMISS COUNTS I AND II OF THE AMENDED COMPLAINT**

Dated:  March 7, 2016

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
JOHN R. PARKER
United States Attorney
JOSEPH H. HUNT
Director
SHEILA M. LIEBER
Deputy Director
ANTHONY J. COPPOLINO
Deputy Director
JAMES J. GILLIGAN
Special Litigation Counsel
MICHELLE R. BENNETT
STUART J. ROBINSON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, D.C.  20530
Tel: (202) 514-9239
Fax: (202) 616-8470
Email: stuart.j.robinson@usdoj.gov

*Attorneys for the Federal Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................ii

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    Statutory Background........................................................................................................ 2

    Plaintiff's Amended Complaint ........................................................................................ 4

ARGUMENT ........................................................................................................................ 6

    A.   Plaintiff Has No Cause Of Action To Compel Consultation Before Individual
         Refugees May Be Resettled In Texas ................................................................... 6

        1.   Section 1522(a)(2)(A) ................................................................................... 6

        2.   The Declaratory Judgment Act ..................................................................... 8

        3.   The Administrative Procedure Act ................................................................ 8

    B.   Section 1522(a)(2)(A) Does Not Require The Federal Government To Provide States
         With Particularized Information About Individual Refugees. ........................................ 11

CONCLUSION.................................................................................................................... 14

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Alexander v. Sandoval,*
    532 U.S. 275 (2001)................................................................. 6, 7

*Alsharqawi v. Gonzales,*
    2007 WL 1346667 (N.D. Tex. Mar. 14, 2007) ................ 10, 11

*Arizona v. United States,*
    132 S. Ct. 2492 (2012)....................................................... 7, 8, 13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................... 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................... 6

*Brunner v. Ohio Republican Party,*
    555 U.S. 5 (2008)........................................................................ 7

*Cannon v. Univ. of Chicago,*
    441 U.S. 677 (1979)............................................................... 7, 13

*Collins v. Morgan Stanley Dean Witter,*
    224 F.3d 496 (5th Cir. 2000) .................................................... 4

*Dallas Cty., Tex. v. MERSCORP, Inc.,*
    2 F. Supp. 3d 938 (N.D. Tex. 2014) ....................................... 8

*Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.,*
    112 F.3d 1283 (5th Cir. 1997) ................................................ 10

*Elkins v. Moreno,*
    435 U.S. 647 (1978).................................................................... 2

*Fund for Animals, Inc. v. BLM,*
    460 F.3d 13 (D.C. Cir. 2006) ................................................... 9

*Graham v. Richardson,*
    403 U.S. 365 (1971).................................................................. 11

*Guerrero v. Clinton,*
    157 F.3d 1190 (9th Cir. 1998) ................................................ 10

*Harris Cty. Texas v. MERSCORP Inc.*,
  791 F.3d 545 (5th Cir. 2015) ................................................................. 8

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
  997 F. Supp. 2d 526 (N.D. Tex. 2014) ................................................... 13

*Invention Submission Corp. v. Rogan*,
  357 F.3d 452 (4th Cir. 2004) ................................................................. 9

*Lopez v. Sentrillon Corp.*,
  749 F.3d 347 (5th Cir. 2014) ............................................................... 12

*Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*,
  723 F.2d 1173 (5th Cir. 1984) ............................................................... 8

*Mathews v. Diaz*,
  426 U.S. 67 (1976)................................................................................ 7

*Morgan v. Swanson*,
  659 F.3d 359 (5th Cir. 2011) ................................................................. 6

*Newsome v. EEOC*,
  301 F.3d 227 (5th Cir. 2002) ............................................................... 10

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004)......................................................................... 9, 10

*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001) ................................................................. 8

*Patrick v. Wal-Mart, Inc.--Store No. 155*,
  681 F.3d 614 (5th Cir. 2012) ................................................................. 6

*Plyler v. Doe*,
  457 U.S. 202 (1982).............................................................................. 8

*Skelly Oil Co. v. Phillips Petrol. Co.*,
  339 U.S. 667 (1950).............................................................................. 8

*Toll v. Moreno*,
  458 U.S. 1 (1982)........................................................................ passim

*Truax v. Raich*,
  239 U.S. 33 (1915)............................................................................. 11

*Universities Research Ass'n, Inc. v. Coutu*,
  450 U.S. 754 (1981)...................................................................... 7, 13

*Whitlock Const., Inc. v. Glickman*,
   71 F. Supp. 2d 1154 (D. Wyo. 1999) .......................................................................... 9

*Wild Fish Conservancy v. Jewell*,
   730 F.3d 791 (9th Cir. 2013) .................................................................................... 10

## **STATUTES**

5 U.S.C. § 551 ................................................................................................................... 9

5 U.S.C. § 701 ................................................................................................................... 9

5 U.S.C. § 706 ............................................................................................................... 5, 8

8 U.S.C. § 1101 ................................................................................................................. 2

8 U.S.C. § 1157 ........................................................................................................... 2, 12

8 U.S.C. § 1202 ................................................................................................................. 4

8 U.S.C. § 1522 .......................................................................................................... passim

Refugee Act of 1980, Pub. L. No. 96-212 ....................................................................... 2

Refugee Assistance Extension Act of 1986, Pub. L. No. 99-605 ............................... 3, 12

## **RULES**

Federal Rule of Civil Procedure 12 ............................................................................... 2, 6

## **OTHER AUTHORITIES**

H.R. Rep. No. 96-608 (1979) ......................................................................................... 13

H.R. Rep. No. 99-132 (1985) ........................................................................... 3, 8, 11, 12

S. Rep. No. 96-256 (1979) ............................................................................................. 13

S. Rep. No. 97-638 (1983) ............................................................................................. 13

## INTRODUCTION

Plaintiff Texas Health and Human Services Commission (the "Commission") seeks a court order compelling the Federal Government to provide Plaintiff with "[a]ll demographic, medical, security, and other case information" relating to individual Syrian refugees to be resettled in Texas as part of the U.S. Refugee Admissions Program.  Dkt No. 13, Ex. B at 1. Plaintiff attempts to base its unprecedented request on the Refugee Act's directive to the Federal Government to consult periodically with State and local governments about sponsorship procedures and the distribution of refugees among the States.  Plaintiff's claims against the Federal Government, however, fail as a matter of law.

First, as this Court already held in denying Plaintiff's request for a preliminary injunction, none of the statutes on which Plaintiff's claims are based provide Plaintiff with a cause of action to compel consultation before the Federal Government may exercise its plenary authority to admit and resettle refugees in a State.  Section 1522(a)(2)(A) of the Refugee Act does not contain an express provision conferring a cause of action on states; nor does it "contain the kind of rights-creating language necessary" to "convey a congressional intent to create a cause of action."  Dkt. No. 70 ("Order Denying PI"), at 8.  The Declaratory Judgment Act does not itself create a cause of action.  *Id*. at 7.  And the "ongoing" process of "regular advance consultation" contemplated by § 1522(a)(2)(A) is neither discrete nor agency action, as required to bring a claim under the Administrative Procedure Act.  *Id*. at 10.

Second, the Refugee Act does not entitle Plaintiff to the case-specific refugee information it seeks.  The statute requires only that the Federal Government consult on a regular basis with the States about the "sponsorship process" and "the intended distribution of refugees among the States."  8 U.S.C. § 1522(a)(2)(A).  It does not create an enforceable legal obligation to provide a State with information about individual refugees so the State may play an independent role in

determining who may be resettled there.  For these reasons, discussed in greater detail below,
Plaintiff's claims against the Federal Defendants (Counts I and II of the Amended Complaint)
should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

### Statutory Background

The Constitution allocates to the Federal Government the exclusive authority to regulate
the "admission, naturalization, and residence of aliens in the United States or the several states,"
leaving the States no power to "add to [or] take from the conditions lawfully imposed by
Congress."  *See, e.g.*, *Toll v. Moreno*, 458 U.S. 1, 10 (1982).  Pursuant to this authority, Congress
enacted the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, a "comprehensive
and complete code covering all aspects of admission of aliens to this country."  *Elkins v.
Moreno*, 435 U.S. 647, 664 (1978).  The Refugee Act of 1980, Pub. L. No. 96-212, amended the
INA to establish "a permanent and systematic procedure for the admission to this country of
refugees of special humanitarian concern to the United States," and "to provide comprehensive
and uniform provisions for [their] effective resettlement."  Pub. L. No. 96-212, § 101(b).  The
Act provides that the number of refugees admitted annually shall generally be "such number as
the President determines, before the beginning of the fiscal year and after appropriate
consultations [with Congress], is justified by humanitarian concerns or is otherwise in the
national interest."  8 U.S.C. § 1157(a)(2).  For the current fiscal year, the President has
determined, after appropriate consultations with Congress, that "[t]he admission of up to 85,000
refugees to the United States . . . is justified by humanitarian concerns or is otherwise in the
national interest."  *See* https://www.whitehouse.gov/the-press-office/2015/09/29/presidential-
determination-presidential-determination-refugee-admissions (last visited Mar. 7, 2016).  The
President also recently announced that at least 10,000 of the refugees admitted to the United

States in fiscal year 2016 will be from Syria.  *See* White House, *Press Briefing by Press Secretary Josh Earnest, 9/10/15*, https://www.whitehouse.gov/the-press-office/2015/09/11/press-briefing-press-secretary-josh-earnest-91015 (last visited Mar. 7, 2016).

Under the Refugee Act, the Federal Government may issue grants to and contract with State and local governments and private non-profit agencies to manage the initial resettlement of, and provide resettlement assistance to, refugees admitted to the United States.  8 U.S.C. § 1522. Pursuant to this authority, the State Department Bureau of Population, Refugees, and Migration ("PRM") maintains and oversees the U.S. Refugee Admissions Program, a public-private partnership involving U.S. Government agencies, domestic non-profit organizations, and international organizations to screen, transport, and provide resettlement services for refugees, while safeguarding the American public from threats to our national security.  *Id*. § 1522(b)(1).

The Refugee Act, as amended by the Refugee Assistance Extension Act of 1986, Pub. L. No. 99-605, directs that the Federal Government, in carrying out this initial program of resettlement under § 1522(b)(1), shall "consult regularly (not less often than quarterly) with State and local governments and private nonprofit voluntary agencies concerning the sponsorship process and the intended distribution of refugees among the States and localities before their placement in those States and localities."  8 U.S.C. § 1522(a)(2)(A).  ("Sponsorship" refers to the process by which resettlement agencies commit to providing assistance to each newly arrived refugee they resettle.  *See* Refugee Resettlement in the United States, http://www.state.gov/j/prm/releases/factsheets/2010/181051.htm (last visited Mar. 7, 2016).) This consultation requirement is "not intended to give States and localities any veto power over refugee placement decisions, but rather to ensure their input into the process and to improve their resettlement planning capacity."  H.R. Rep. No. 99-132 at 19 (1985).

3

The Department of Health and Human Services Office of Refugee Resettlement ("ORR") is also authorized to make grants to and contract with public and private non-profit agencies to assist refugees in achieving economic self-sufficiency, including job training and English-language education. 8 U.S.C. § 1522(c). The Federal Government may also make grants to and contract with State and local governments and private non-profit agencies, and provide reimbursement to States, to cover the costs of cash and medical assistance provided to refugees. *Id*. § 1522(e). In order to receive federal funds for these purposes, a State must submit a plan that meets the requirements imposed by the INA. *Id*. § 1522(a)(6). Assistance and services funded under the Refugee Act are required to be provided to refugees "without regard to race, religion, nationality, sex, or political opinion." *Id*. § 1522(a)(5).

### Plaintiff's Amended Complaint

On November 19, 2015, the Commission wrote to the refugee resettlement agencies operating in Texas, including Defendant International Rescue Committee, Inc. ("IRC"), requesting that they immediately discontinue resettlement of Syrian refugees in Texas. Dkt. No. 13 (the "Amended Complaint" or "Am. Compl."), Ex. A.[1] The letter indicated that the Governor of Texas had recently directed the Commission to cease participation in resettling Syrian refugees in Texas, citing "the recent deadly terrorist attacks in Paris." *Id*., Ex. A. Plaintiff also asserts that it requested specific information from IRC about the Syrian refugees scheduled to arrive in Texas on December 4, 2015, but was told that requests for such information must be addressed to the Department of State. *Id*. ¶ 15.[2]

---

[1] A court may consider attachments to the complaint when ruling on a motion to dismiss. *See, e.g.*, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

[2] Such information is considered confidential under the INA. *See* 8 U.S.C. § 1202(f).

Almost two weeks later, on December 1, 2015, the Commission wrote to PRM requesting "specific refugee case information" about all Syrian refugees to be resettled in Texas within the next 90 days, including "[a]ll demographic, medical, security, and other case information" about them.  *Id.*, Ex. B at 1.  Plaintiff brought this suit the next day, and filed its Amended Complaint on December 7.

The Amended Complaint seeks declaratory and injunctive relief against the Federal Defendants, *id.* at 1-2, alleging that they have not "'consult[ed] regularly' with States concerning 'the intended distribution of refugees among the States . . . before their placement in those States," *id.* ¶¶ 1, 3, thus allegedly leaving Texas "uninformed about refugees that could well pose a security risk to Texans and without any say in the process of resettling these refugees," *id.* ¶ 7. Specifically, Plaintiff contends that the Federal Government is required to provide it with "[a]ll demographic, medical, security, and other case information" relating to individual Syrian refugees to be resettled in Texas.  *Id.*, Ex. B at 1.  On this basis, Count I of the Amended Complaint asserts that the Federal Defendants have breached a "statutory duty of advance consultation" under § 1522(a)(2)(A).  *Id.* ¶¶ 19-21.  Count II asserts a claim under the Administrative Procedure Act, 5 U.S.C. § 706(1), to compel "agency action unlawfully withheld."  *Id.* ¶¶ 22-29.[3]  These claims mirror those raised by Plaintiff in its request for a preliminary injunction, Dkt. No. 18, which this Court recently denied because, among other things, Plaintiff "has no viable cause of action against the Federal Defendants," Order Denying PI at 6.

---

[3] Count III advances a breach-of-contract claim against IRC that is not directed at the Federal Defendants, Am. Compl. ¶¶ 30-39, and so is not addressed in this motion.

**ARGUMENT**

Plaintiff's claims against the Federal Defendants—Counts I and II of the Amended Complaint—should be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Mere "labels and conclusions" and "naked assertion[s] devoid of further factual enhancement" are not sufficient.  *Id.* at 678.  Rather, a court must disregard "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and determine whether the remaining "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief."  *Id.* at 679; *see also Patrick v. Wal-Mart, Inc.--Store No. 155*, 681 F.3d 614, 622 (5th Cir. 2012); *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011).  Plaintiff has not met this standard, because its claims against the Federal Defendants fail as a matter of law.

## A.  Plaintiff Has No Cause Of Action To Compel Consultation Before Individual Refugees May Be Resettled In Texas.

Plaintiff's Amended Complaint should be dismissed first because neither the Refugee Act, nor the Declaratory Judgment Act, nor the Administrative Procedure Act (the "APA") creates a cause of action to compel consultation before individual refugees are placed in the State of Texas.  In short, as this Court previously held, Plaintiff "has no viable cause of action against the Federal Defendants."  Order Denying PI at 6.

### 1.  The Refugee Act

Section 1522(a)(2)(A) of the Refugee Act does not itself create a cause of action to compel consultation before the Federal Government may exercise its plenary authority to admit and resettle refugees.  "[P]rivate rights of action to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  "The judicial task is to interpret

6

the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* Where the necessary intent is absent, "a cause of action does not exist and courts may not create one." *Id.* at 286-87.

Section 1522 has no express provision creating a private cause of action for the States. The statute does not contain the sort of "rights-creating language" that courts find "critical" to imputing to Congress an intent to create a private right of action. *Sandoval*, 532 U.S. at 288; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008) (per curiam). In *Sandoval*, the Supreme Court distinguished between the rights-creating language, "[n]o person . . . shall . . . be subjected to discrimination," and its antithesis, "[e]ach Federal department and agency . . . is authorized and directed to effectuate the provisions of [the statute]." 532 U.S. at 288-89. Section 1522(a)(2)(A) falls squarely within the latter camp. It does not "explicitly confer[] [any] right directly on" the States. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690 n.13 (1979). Instead, it is "phrased as a directive to federal agencies engaged in the distribution of public funds" under § 1522(b)(1). *Sandoval*, 532 U.S. at 289. Courts typically do not "infer a private remedy where [as here] Congress . . . has framed the statute simply as a . . . command to a federal agency." *Universities Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 772 (1981); *see* Order Denying PI at 8 (concluding that § 1522(a)(2)(A) does not "contain the kind of rights-creating language necessary" to "convey a congressional intent to create a cause of action").

This understanding of § 1522(a)(2)(A) is buttressed by the context in which Congress legislated. The Constitution vests authority to regulate the admission, naturalization, and residence of aliens exclusively with the Federal Government. *Toll*, 458 U.S. at 10; *see Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012); *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976). Under our constitutional structure, States may not interfere with the Federal Government's execution of the immigration laws or impose conditions on the admission or residence of aliens

7

that Congress has not authorized.  *Toll*, 458 U.S. at 11; *see Arizona*, 132 S. Ct. at 2498; *Plyler v. Doe*, 457 U.S. 202, 225 (1982).  Nothing in § 1522 suggests an intent by Congress to invert the constitutional order by permitting States to veto the Federal Government's refugee resettlement determinations on the ground that States were not furnished person-specific information about individual refugees.  The legislative history demonstrates just the opposite, "emphasiz[ing] that the[] requirements [of § 1522] are not intended to give States and localities any veto power over refugee placement decisions."  H.R. Rep. No. 99-132 at 19.

### 2.    The Declaratory Judgment Act

Plaintiff's reliance on the Declaratory Judgment Act, *see* Am. Compl. at 7, does not alter this conclusion.  As this Court has already recognized in this case, the Declaratory Judgment Act does not create a substantive cause of action.  Order Denying PI at 7; *see, e.g.*, *Harris Cty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 552-53 (5th Cir. 2015).  The Act "enlarged the range of remedies available in the federal courts," but it did not create a new right to seek those remedies. *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950); *Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001).  Hence, to maintain a declaratory judgment action a plaintiff must point to a cause of action arising under some other law, *see Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984), and "cannot use the Declaratory Judgment Act to create a private right of action where none exists," *Dallas Cty., Tex. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 945-46 (N.D. Tex. 2014), *aff'd sub nom. Harris Cty. Tex. v. MERSCORP, Inc.*, 791 F.3d 545 (5th Cir. 2015).  Plaintiff has identified no such law here; thus the Declaratory Judgment Act provides it no basis for relief.  *See* Order Denying PI at 6-10.

### 3.    The Administrative Procedure Act

Count II of the Amended Complaint asserts a claim under the APA to "compel agency action" (*i.e.*, consultation) "unlawfully withheld."  Am. Compl. ¶¶ 22-29; *see* 5 U.S.C. § 706(1).

Such a claim can proceed "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 64 (2004). Plaintiff cannot move forward on this claim, either.

First, the consultation contemplated by § 1522(a)(2)(A) is not "agency action." *SUWA*, 542 U.S. at 64. The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §§ 551(13), 701(b)(2). Each of these categories of action is then further defined. *See id.* §§ 551(4), (6), (8), (10), (11). A "'failure to act' is properly understood as . . . a failure to take one of the agency actions . . . defined in § 551(13)." *SUWA*, 542 U.S. at 62.

Courts "have long recognized" that the term "agency action," while "expansive," "is not so all-encompassing as to authorize . . . judicial review over everything done" by an agency. *Fund for Animals, Inc. v. BLM*, 460 F.3d 13, 19-20 (D.C. Cir. 2006); *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004); *see Whitlock Const., Inc. v. Glickman*, 71 F. Supp. 2d 1154, 1159 (D. Wyo. 1999). "Agencies prepare proposals, conduct studies, meet [*i.e.*, consult] with Members of Congress and interested groups, and engage in a wide variety of activities that comprise the common business of managing government programs." *Fund for Animals*, 460 F.3d at 19-20. Such activities do not constitute agency action. *See id.*

The consultation contemplated by § 1522(a)(2)(A) is not an "agency action." Rather, it is a recurrent (at least quarterly) process through which the Federal Government communicates with State and local governments concerning statutorily designated topics pertaining to refugee resettlement. *Id.* Such a process cannot reasonably be viewed as a "rule," 5 U.S.C. § 551(4), "order," *id.* § 551(6), "license," *id.* § 551(8), "sanction," *id.* § 551(10), or "relief," *id.* § 551(11). *See, e.g.*, Order Denying PI at 10; *Fund for Animals*, 460 F.3d at 19-20 (an agency's budget request is not agency action); *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 801 (9th Cir.

2013) (closing the gates of a dam is not fairly analogous to a "rule, order, license, sanction, [or] relief"); *Guerrero v. Clinton*, 157 F.3d 1190, 1195 (9th Cir. 1998) (agency response to a congressional reporting requirement is not agency action).  Moreover, the challenged agency conduct must also be "discrete."  *SUWA*, 542 U.S. at 64, 67.  The ongoing process of "regular[ ]" consultation called for by § 1522(a)(2)(A) is not a "discrete" action subject to compulsion under the APA.  *See id.* at 64-65; Order Denying PI at 10 (holding that "the Refugee Act's advance consultation requirement is best understood as an ongoing, dynamic process," "not the kind of discrete agency action reviewable by federal courts").

Even where discrete agency action is involved, only agency action "that is legally *required*" can be compelled under the APA.  *SUWA*, 542 U.S. at 63.  "In this regard the APA carrie[s] forward the traditional practice" under writs of mandamus, which were limited "to enforcement of a specific, unequivocal command," *id.*, and "rules out judicial direction of . . . action that is not demanded by law," *id.* at 65.  Hence, agency action may be compelled "only whe[re] the plaintiff can establish a clear right to the relief sought [and] a clear duty by the defendant to do the particular act."  *Alsharqawi v. Gonzales*, 2007 WL 1346667, at *3 (N.D. Tex. Mar. 14, 2007) (quoting *Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002)); *see also Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997).

Plaintiff's APA claim does not meet this exacting standard.  The Federal Defendants have no duty, much less a plainly defined and unequivocal one, to provide to Plaintiff "[a]ll demographic, medical, security, and other case information relating to Syrians slated or scheduled for resettlement in Texas."  Am. Compl., Ex. B.  To the contrary, as explained more fully below, the statute specifies the two and only two subjects as to which the Federal Government must consult with State and local governments, the "sponsorship process," and the

10

"intended distribution of refugees among the States and localities."  8 U.S.C. § 1522(a)(2)(A).

Neither subject encompasses specific information about individual refugees.  Thus, the Refugee

Act does not "plainly prescribe" a duty to disclose such information to Plaintiff, *Alsharqawi*,

2007 WL 1346667, at *2-3, and, as a matter of law, the Federal Government cannot be

compelled under the APA to provide it.

     For these reasons, Plaintiff has no cause of action against the Federal Defendants to

compel consultation, and Counts I and II of the Amended Complaint should be dismissed.

    **B.**    **Section 1522(a)(2)(A) Does Not Require The Federal Government To Provide States With Particularized Information About Individual Refugees.**

     Plaintiff's Amended Complaint should be dismissed for the additional reason that

§ 1522(a)(2)(A) does not require the Federal Defendants to provide Plaintiff with the information

it seeks.  Nothing in § 1522(a)(2)(A) requires the Federal Government to provide Plaintiff with

"demographic, medical, security, and other case information," Am. Compl., Ex. B at 1, so that

Texas may "assess the security risk posed by refugees in advance of their arrival," *id*. ¶ 21.

Neither the Refugee Act nor the Constitution permits a State to exclude refugees based on its

assessment of their "security risk," or any other grounds.  *See* H.R. Rep. No. 99-132 at 19

(§ 1522(a)(2)(A) is "not intended to give States and localities any veto power over refugee

placement decisions."); *Toll*, 458 U.S. at 10; *see also Graham v. Richardson*, 403 U.S. 365, 378

(1971) ("aliens lawfully within this country have a right to enter and abide in any State in the

Union"); *Truax v. Raich*, 239 U.S. 33, 39 (1915).

     Section 1522(a)(2)(A) only instructs the Federal Government to consult periodically with

State and local governments about "the sponsorship process and intended distribution of refugees

among the State and localities."  Nowhere in its pleadings does Texas contend that the Federal

Government failed to consult quarterly regarding the sponsorship process or intended

distribution of refugees among the State and localities.  Rather, Texas contends that it is entitled

to all "demographic, medical, security, and other case information" of all Syrian refugees to be resettled in Texas.  The particularized information about individual refugees that the Commission requested of PRM, and that it now pursues in this litigation, plainly does not fall within the scope of the statute's directive to consult about the "sponsorship process" and the "distribution of refugees."  That should end the inquiry.  *See Lopez v. Sentrillon Corp.*, 749 F.3d 347, 349 (5th Cir. 2014), *as revised* (Apr. 28, 2014) ("[W]here the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.").

That said, the legislative history also confirms that § 1522(a)(2)(A) does not entitle Plaintiff to the information it seeks.  The House Report on the Refugee Assistance Extension Act of 1986, Pub. L. No. 99-605, describes the statute as requiring consultation "on the sponsorship and placement process," and explains that consultation is intended to "enhance cooperation and communication . . . regarding placement strategies and decisionmaking."  H.R. Rep. No. 99-132 at 18-19.  Nothing in the legislative history suggests that the consultation provision requires the Federal Government to provide States with "specific refugee case information" or "demographic, medical, and security" information on individual refugees before they are resettled.  Am. Compl., Ex. B at 1.

Plaintiff's reliance on 8 U.S.C. § 1157(e), as informing the meaning of the consultation requirement under § 1522(a)(2)(A), does nothing to salvage Plaintiff's claim.  *See* Pl.'s Am. App. for Prelim. Inj., Dkt. No. 17, at 10-12.  The INA provides that the number of refugees to be admitted to the United States each fiscal year shall be determined by the President after "appropriate consultation" with Congress.  8 U.S.C. § 1157(a).  Subsection 1157(e) defines "appropriate consultation" to include certain categories of information, but only "for the purposes" of consultation with Congress.  Plaintiff nonetheless has suggested that "appropriate consultation" should inform the meaning of § 1522(a)(2)(A).  *See* Dkt. No. 17 at 11-12.  Even

accepting that dubious proposition at face value,[4] § 1157(e) does not include an obligation to provide person-specific information to Congress about individual refugees, and so does not support Texas' contention that a similar obligation arises under § 1522(a)(2)(A).

Because the plain language of § 1522(a)(2)(A) does not require the Federal Government to provide the Commission with particularized information about individual refugees before they are resettled, Plaintiff has failed to state a claim against the Federal Defendants upon which relief can be granted.[5]

---

[4] Congress determined that its role in the decision-making process for refugee admissions should be "explicitly stated" by defining in § 1157(e) what is meant by "appropriate consultation," because the Constitution charges Congress "with the responsibility for the regulation of immigration." S. Rep. No. 96-256 at 7 (1979); H.R. Rep. No. 96-608 at 14 (1979). State and local governments play no similar role in the admission of aliens to this country. *See Arizona*, 132 S. Ct. at 2499; *Toll*, 458 U.S. at 10; *see also* S. Rep. No. 97-638 at 8 (1982) ("The decision to admit a refugee is a federal decision.").

[5] In its Reply in Support of Amended Application for Preliminary Injunction, Plaintiff belatedly suggested that 8 U.S.C. § 1522(a)(2)(D) may provide a basis for the relief it seeks. *See* Dkt. No. 57, at 4-6. Even assuming, *arguendo*, that Plaintiff could rely on a cause of action not pled in its Amended Complaint, *but see, e.g.*, *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 547 (N.D. Tex. 2014), § 1522(a)(2)(D) cannot save Plaintiff's claims against the Federal Defendants from dismissal. Like § 1522(a)(2)(A), § 1522(a)(2)(D) does not create a private cause of action for the States. It does not "explicitly confer[] [any] right directly on" the States, *Cannon*, 441 U.S. at 690 n.13, and is instead "framed . . . simply as a . . . command to a federal agency" (and a qualified command at that), *Universities Research Ass'n*, 450 U.S. at 772. In addition, § 1522(a)(2)(D) simply requires the Federal Government to take into account recommendations of a State "[w]ith respect to the location of placement of refugees within [that] State," to the extent the State's recommendations are consistent with the Federal Government's resettlement policies and strategies. *Id.* It does not require the Federal Government to provide Plaintiff with any information, much less the "demographic, medical, security," or other "specific refugee case information" sought by Plaintiff.

## CONCLUSION

Counts I and II of Plaintiff's Amended Complaint should be dismissed.[6]

Dated:  March 7, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOHN R. PARKER
United States Attorney

JOSEPH H. HUNT
Director

SHEILA M. LIEBER
Deputy Director

ANTHONY J. COPPOLINO
Deputy Director

JAMES J. GILLIGAN
Special Litigation Counsel

  */s/ Stuart J. Robinson*
MICHELLE R. BENNETT
STUART J. ROBINSON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, D.C.  20530
Tel: (202) 514-9239
Fax: (202) 616-8470
Email: stuart.j.robinson@usdoj.gov

*Attorneys for the Federal Defendants*

---

[6] During the December 7, 2015 telephone status conference, the Court instructed that, while Plaintiff's request for preliminary injunctive relief was pending, the Federal Defendants must provide Plaintiff with seven days' advance notice of the arrival of any Syrian refugees to be resettled in Texas.  Because the Court has resolved (and denied) Plaintiff's amended application for preliminary injunction, the Federal Defendants understand that their obligation to provide the court-ordered notice has ceased and thus will no longer provide it unless the Court directs otherwise.

**CERTIFICATE OF SERVICE**

I certify that on March 7, 2016, I caused to be filed electronically the foregoing

memorandum with the Clerk of Court using the Court's CM/ECF system, which sends a Notice

of Electronic Filing to counsel of record.

*/s/ Stuart J. Robinson*
Stuart J. Robinson
