# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| TEXAS HEALTH AND HUMAN SERVICES COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Civil Action No. 3:15-cv-3851 (DCG) |

**REPLY BRIEF IN SUPPORT OF FEDERAL DEFENDANTS' MOTION
TO DISMISS COUNTS I AND II OF THE AMENDED COMPLAINT**

Dated: April 11, 2016

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOHN R. PARKER
United States Attorney

JOSEPH H. HUNT
Director

SHEILA M. LIEBER
Deputy Director

ANTHONY J. COPPOLINO
Deputy Director

JAMES J. GILLIGAN
Special Litigation Counsel

MICHELLE R. BENNETT
STUART J. ROBINSON
Trial Attorneys

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, D.C. 20530
Tel: (202) 514-9239
Fax: (202) 616-8470
Email: stuart.j.robinson@usdoj.gov

*Attorneys for the Federal Defendants*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

    A.    Plaintiff Has No Cause of Action ................................................................................. 1

        1.    The Refugee Act ............................................................................................... 1

        2.    The Declaratory Judgment Act ....................................................................... 7

        3.    The Administrative Procedure Act ................................................................. 8

    B.    Plaintiff Has Not Stated a Failure to Comply With the Consultation Requirements of the Refugee Act ......................................................................................................... 9

CONCLUSION ........................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alabama v. PCI Gaming Auth.*,
  801 F.3d 1278 (11th Cir. 2015) .............................................................................. 8

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ............................................................................................ 2, 5

*Arrington v. Helms*,
  438 F.3d 1336 (11th Cir. 2006) ........................................................................... 3, 4

*Audler v. CBC Innovis Inc.*,
  519 F.3d 239 (5th Cir. 2008) ................................................................................. 9

*Cal. Wilderness Coal. v. U.S. Dep't of Energy*,
  631 F.3d 1072 (9th Cir. 2011) ............................................................................... 9

*Cannon v. Univ. of Chicago*,
  441 U.S. 677 (1979) ............................................................................................ 4, 7

*Casas v. Am. Airlines, Inc.*,
  304 F.3d 517 (5th Cir. 2002) ............................................................................ 2, 5, 6

*Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*,
  692 F.3d 1200 (11th Cir. 2012) ............................................................................. 2

*Cort v. Ash*,
  422 U.S. 66 (1975) .................................................................................................. 2

*Dallas County v. MERSCORP, Inc.*,
  2 F. Supp. 3d 938 (N.D. Tex. 2014) ....................................................................... 8

*Delancey v. City of Austin*,
  570 F.3d 590 (5th Cir. 2009) .................................................................................. 3

*Deubert v. Gulf Fed. Sav. Bank*,
  820 F.2d 754 (5th Cir. 1987) .................................................................................. 5

*Drake v. Pan. Canal Comm'n*,
  907 F.2d 532 (5th Cir. 1990) .................................................................................. 1

*Gonzaga Univ. v. Doe*,
  536 U.S. 273 (2002) .......................................................................................... 2, 4, 5

*Harris County Tex. v. MERSCORP Inc.*,
  791 F.3d 545 (5th Cir. 2015) .................................................................................. 8

**Page(s)**

*In re Miller*,
 570 F.3d 633 (5th Cir. 2009) ............................................................................................ 10

*La. Landmarks Soc'y v. City of New Orleans*,
 85 F.3d 1119 (5th Cir. 1996) ............................................................................................. 2

*Love v. Delta Air Lines*,
 310 F.3d 1347 (11th Cir. 2002) ........................................................................................ 6

*Martes v. Chief Exec. Officer of S. Broward Hosp. Dist.*,
 683 F.3d 1323 (11th Cir. 2012) ........................................................................................ 3

*Norton v. S. Utah Wilderness All.*,
 542 U.S. 55 (2004) ............................................................................................................ 9

*Nw. Airlines v. Transp. Workers Union*,
 451 U.S. 77 (1981) ........................................................................................................ 6, 9

*Planned Parenthood of Hous. & Se. Tex. v. Sanchez*,
 403 F.3d 324 (5th Cir. 2005) ......................................................................................... 7-8

*Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urban Dev.*,
 980 F.2d 1043 (5th Cir. 1993) ....................................................................................... 1-2

*Rogers v. Frito-Lay, Inc.*,
 611 F.2d 1074 (5th Cir. 1980) .......................................................................................... 7

*Salazar v. Maimon*,
 750 F.3d 514 (5th Cir. 2014) .......................................................................................... 10

*Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*,
 550 F.3d 1121 (Fed. Cir. 2008) ........................................................................................ 9

*Santa Clara Pueblo v. Martinez*,
 436 U.S. 49 (1978) ............................................................................................................ 8

*Tamiami Partners v. Miccosukee Tribe of Indians*,
 63 F.3d 1030 (11th Cir. 1995) .......................................................................................... 6

*Till v. Unifirst Fed. Sav. & Loan Ass'n*,
 653 F.2d 152 (5th Cir. 1981) ............................................................................................ 5

*Toll v. Moreno*,
 458 U.S. 1 (1982) .............................................................................................................. 8

*Touche Ross & Co. v. Redington*,
 442 U.S. 560 (1979) .......................................................................................................... 6

**Page(s)**

*Transamerica Mortg. Advisors (TAMA) v. Lewis*,
   444 U.S. 11 (1979) ........................................................................................... 4, 6

*U.S. ex rel. Glynn v. Capeletti Bros.*,
   621 F.2d 1309 (5th Cir. 1980) ................................................................................ 7

*United States v. Mitchell*,
   445 U.S. 535 (1980) ............................................................................................... 1

*United States v. S. Carolina*,
   840 F. Supp. 2d 898 (D.S.C. 2011), *modified in part*, 906 F. Supp. 2d 463
   (D.S.C. 2012) ......................................................................................................... 6

*Univs. Research Ass'n v. Coutu*,
   450 U.S. 754 (1981) ......................................................................................... 2-3, 4

*Wright v. Allstate Ins. Co.*,
   250 F. App'x 1 (5th Cir. 2007) ............................................................................ 6, 8

**STATUTES**

5 U.S.C. § 551 ................................................................................................................. 9

5 U.S.C. § 706 ................................................................................................................. 9

8 U.S.C. § 1252 ............................................................................................................... 6

8 U.S.C. § 1522 ........................................................................................................ *passim*

8 U.S.C. § 1103 ................................................................................................................ 6

8 U.S.C. § 1104 ............................................................................................................... 6

42 U.S.C. § 1983 ............................................................................................................. 4

Pub. L. No. 96-212, 94 Stat. 102 ..................................................................................... 5

**RULES**

FED. R. CIV. P. 54(c) ....................................................................................................... 11

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 132, 99th Cong., 1st Sess. (1985) .............................................. 5, 7, 9, 11

# INTRODUCTION

Plaintiff's response to the Federal Defendants' motion to dismiss (Dkt. No. 78) ("Pl.'s Opp'n") casts no doubt on the conclusion, already reached by this Court, that Plaintiff "has no viable cause of action against the Federal Defendants." Dkt. No. 70 ("Order Denying PI") at 6. Invoking the operational flexibility that the Refugee Act is intended to provide the Federal Government in addressing refugee crises and the needs of the most vulnerable, Plaintiff roots its arguments in the notion that the consultation requirements of 8 U.S.C. § 1522(a) have no fixed content, but are subject to continuous judicial re-definition based on whatever "pressing … concern[s]" may occur to a State, in light of "changed circumstances" or "the issues of the day." That is not the statute Congress enacted. The plain language of the Refugee Act, which Plaintiff all but ignores, directs the Federal Government, at least quarterly, to consult with State and local governments concerning the sponsorship process and the intended distribution of refugees among the States, no more. The Act gives no indication that Congress intended this instruction to be judicially enforced (much less judicially transformed) as a matter of right. The light cast by what the Act says, and what it does not say, quickly reveals Plaintiff's arguments as meritless.

# ARGUMENT

## A. Plaintiff Has No Cause of Action

### 1. The Refugee Act

Plaintiff concedes that § 1522(a) does not contain an *express* provision creating a cause of action for States against the Federal Government and instead asks this Court to infer one. *See* Pl.'s Opp'n at 3. That concession is fatal to Count I of the Amended Complaint. The United States, its agencies, and its employees sued in an official capacity are immune from suit absent a waiver of sovereign immunity. *Drake v. Panama Canal Comm'n*, 907 F.2d 532, 534 (5th Cir. 1990). Such a waiver "cannot be implied but must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538 (1980). "[B]ecause [§ 1522(a)] does not expressly waive sovereign immunity, no right of action against [the Federal Defendants] may be implied" under the statute. *Resident Council of Allen Parkway Vill. v. HUD,* 980 F.2d 1043, 1054 (5th Cir.

1993); *see Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*, 692 F.3d 1200, 1209-10 (11th Cir. 2012) ("The very notion of an *implied* cause of action against [a sovereign] is at war with the requirement that Congress must *expressly* abrogate the [sovereign's] immunity.").

Nevertheless, even assuming that an implied right of action could exist against the Federal Government, § 1522(a) creates no such right. The question is not whether a cause of action may be "fairly" or "reasonably" inferred, as Plaintiff would have it, Pl.'s Opp'n at 3, 5, but whether Congress "clear[ly] and unambiguous[ly]" intended to create a cause of action against the Government in favor of States. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002). The Court must determine whether Congress intended "to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The analysis "begin[s] with the familiar presumption that Congress did not intend to create a private right of action." *La. Landmarks Soc'y, Inc. v. City of New Orleans*, 85 F.3d 1119, 1123 (5th Cir. 1996). Plaintiff then "bears the relatively heavy burden" of overcoming that presumption by "demonstrating that Congress affirmatively contemplated private enforcement when it passed the . . . statute." *Id.*

In determining whether a statute contains an implied cause of action, courts may consider the four factors identified in *Cort v. Ash*, 422 U.S. 66, 78 (1975), but, as noted above, the "touchstone" of the analysis is "[c]ongressional intent." *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 521-22 (5th Cir. 2002). In any event, none of the *Cort* factors demonstrates that Congress clearly intended to create a cause of action under § 1522(a).

First, § 1522(a) lacks the "rights-creating language" necessary to find an implied cause of action. *Alexander*, 532 U.S. at 277; *see Cort*, 422 U.S. at 78. Plaintiff asserts that it is enough that § 1522 repeatedly references States and that it was enacted, at least in part, to benefit States. Pl.'s Opp'n at 3-6. But, "[w]hen surveying a statute for rights-conferring language, . . . incantation of the word 'individual,'" or, as here, "State," "is not talismanic." *Martes v. Chief Exec. Officer of S. Broward Hosp. Dist.*, 683 F.3d 1323, 1328 (11th Cir. 2012). Moreover, it is insufficient that a statute may be "designed to benefit a particular class." *Univs. Research Ass'n,*

*Inc. v. Coutu*, 450 U.S. 754, 771 (1981). The language of the statute also "must … indicate[] that Congress intended that it be enforced through private litigation." *Id*.

In *Delancey v. City of Austin*, 570 F.3d 590 (5th Cir. 2009), for example, the Fifth Circuit refused to infer a cause of action under a statutory provision that is analogous to § 1522(a). The statute stated, in relevant part, that "[t]he head of any displacing agency shall ensure that the relocation assistance advisory services described in [42 U.S.C. § 4265(c)] . . . are made available to *all persons displaced* by such agency." *Id*. at 594 (emphasis added). Title 42, section 4265(c) further provided that "[e]ach relocation assistance advisory program . . . shall include such measures . . . as may be necessary or appropriate in order to:

> (1) determine … the needs and preferences, if any, of *displaced persons* for relocation assistance; … (5) supply (A) information concerning other Federal and State programs which may be of assistance to *displaced persons*, and (B) technical assistance to *such persons* in applying for [such] assistance …; and (6) provide other advisory services to *displaced persons* in order to minimize hardships to *such persons* in adjusting to relocation.

*See id*. (emphasis added). Despite the statute's repeated references to "displaced persons" and its directive to provide specific information and services to displaced persons for their benefit, the court concluded that the statute lacks rights-creating language. The statute, the court explained, is "directed at the 'head of any displacing agency' rather than at the individuals benefited by the statute," and "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Id*.

The court in *Arrington v. Helms*, 438 F.3d 1336 (11th Cir. 2006), reached the same conclusion with respect to another comparable statute. The statute provided that, "[t]o the extent that the amount [of State-collected child support payments] does not exceed the amount required to be paid to the family for the month in which collected, *the State shall distribute the amount so collected to the family*." *Id*. at 1341 n.8 (emphasis added). The court rejected the plaintiff's reliance on the statute's "repeated[] refer[ences] to the individual recipient 'family'" and instead focused on the language "*the State shall*." *Id*. at 1346. The court concluded that the statute lacks rights-creating language because it "speaks only to the states, instructing them to

3

distribute child support payments in a certain fashion; it does not speak directly to individual custodial parents."[1] *Id.*; s*ee also, e.g.*, *Univs. Research*, 450 U.S. at 772 (holding that statute did not create implied cause of action despite its mention of a benefitted class (laborers and mechanics), because it is "phrased as a directive to federal agencies").

The cases Plaintiff cites are inapposite, because the statutory provisions in those cases are very different from § 1522(a). *See* Pl.'s Opp'n at 3. The statute in *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979), "unmistakabl[y] focus[ed] on the benefited class," stating that "[n]o person . . . shall . . . be subjected to discrimination." *Id.* at 681-82, 691. Section 1522(a) does not provide that "no State shall be denied its right to consultation regarding refugee resettlement." Instead, it is framed as a "command to a federal agency." *Univs. Research*, 450 U.S. at 772. In such circumstances, courts typically refuse to infer a cause of action. *Id*. The statute in *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 17 (1979), declared that certain contracts "shall be void." The Court determined that Congress intended to create a limited right of action, because "declaring certain contracts void . . . necessarily contemplates that the issue of voidness under [the Act's] criteria may be litigated somewhere." *Id*. at 18. Consultation under § 1522(a), in contrast, does not of necessity implicate judicial involvement.[2]

With respect to the second *Cort* factor, Plaintiff has failed to demonstrate that Congress intended to create a private right of action under § 1522(a). As explained above, the text of the statute does not evidence any such intent. *See Gonzaga Univ.*, 536 U.S. at 284 n.3 (courts "rarely impute to Congress an intent to create a private right of action" where a statute lacks rights-creating language). Nor is such an intent suggested in the legislative history. While Congress may have intended to establish "a progressive Congressional design to *broaden* the

---

[1] Cases, like *Arrington*, that examine whether a statute creates rights enforceable under 42 U.S.C. § 1983, are relevant to an implied-right-of-action analysis, because the rights-creating-language inquiry is the same in both contexts, although implied-right-of-action cases also require a showing of intent to create a private *remedy*. *Gonzaga Univ.*, 536 U.S. at 283-85.

[2] Contrary to Plaintiff's assertion, *see* Pl.'s Opp'n at 3, in *Alexander*, the Court *declined* to infer a right of action because the statute was "phrased as a directive to federal agencies." 532 U.S. at 289. *Alexander*, thus, supports the Federal Defendants' position.

various topics of prospective consultation and the voice of the States in the process," Pl.'s Opp'n at 8 (emphasis in original), the legislative record is silent as to Congress's intent to make consultation judicially enforceable. This silence is fatal to Plaintiff's argument. *See, e.g.*, *Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 160-61 (5th Cir. 1981); *Casas*, 304 F.3d at 522.

The amendments relied on by Plaintiff, Pl.'s Opp'n at 6-12, do not alter this conclusion. Congress, to address perceived shortcomings in the consultation process, amended the Refugee Act in 1982 and 1986 to expand and elaborate upon the Government's consultation obligations to the States regarding the sponsorship process and intended distribution of refugees. *See* H.R. Rep. No. 99-132 at 18-19. In so doing, Congress carefully balanced the pertinent federal, State, and local interests, and could have included a right of action to enforce § 1522(a) if it determined that such a right was warranted. It did not do so, notwithstanding its conclusion that the Federal Government's consultation with the States required significant improvement. That decision—coupled with Congress's pronouncement that the consultation requirements "are not intended to give States and localities any veto power over refugee placement decisions," H.R. Rep. No. 99-132 at 19—weighs heavily against finding a right of action. *See Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 759 (5th Cir. 1987) ("Even though the National Housing Act has been amended several times, Congress has never included or even proposed … a private cause of action ….").

Nor does the structure of the statutory scheme support Plaintiff's argument. Where the statutory structure evidences a comprehensive enforcement scheme, courts should not find rights of action in provisions that do not expressly provide for them. *See, e.g.*, *Nw. Airlines, Inc. v. Transp. Workers Union*, 451 U.S. 77, 93-94 (1981); *Casas*, 304 F.3d at 523. In particular, "[t]he fact that Congress has expressly provided private litigants with one right of action . . . powerfully suggests that Congress did not intend to provide other private rights of action." *Love v. Delta Air Lines*, 310 F.3d 1347, 1357 (11th Cir. 2002); *see Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 63 F.3d 1030, 1049 (11th Cir. 1995).

The Immigration and Nationality Act ("INA")—which the Refugee Act amended, Pub. L. No. 96-212, 94 Stat. 102—includes "a comprehensive enforcement scheme exclusively under

5

federal control." *Cf. United States v. S. Carolina*, 840 F. Supp. 2d 898, 910 (D.S.C. 2011), *modified in part*, 906 F. Supp. 2d 463 (D.S.C. 2012); *see also* 8 U.S.C. §§ 1103-1104 (detailing the broad duties of specific Executive Branch officials in administering and enforcing the provisions of the INA). Within this scheme, Congress has expressly authorized judicial review of certain claims brought by aliens. *E.g.,* 8 U.S.C. § 1252(b)(9) (permitting review of final removal order). This statutory structure implies that if Congress meant § 1522(a) to be judicially enforceable, it would have included an express right of action. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979) ("[W]hen Congress wished to provide a private damage remedy, it knew how to do so and did so expressly."); *TAMA,* 444 U.S. at 20 ("it is highly improbable that Congress absentmindedly forgot to mention an intended private action").

  Plaintiff has failed to meet its burden under the first two *Cort* factors, and thus, the Court need not reach the third and fourth factors. *See Wright v. Allstate Ins. Co.*, 250 F. App'x 1, 7 (5th Cir. 2007) ("The third and fourth *Cort* questions are relevant only if the answers to the first two indicate Congressional intent to create a private remedy."). Nevertheless, Plaintiff also cannot prevail under the remaining *Cort* factors.

  Regarding the third factor (whether an implied remedy is consistent with the purposes of the legislative scheme), Plaintiff claims a right of action should be recognized because "[n]o judicial consequences means that the Federal Defendants could . . . stop consulting at all, much less regularly." Pl.'s Opp'n at 14-15. But the issue before the Court is not whether inferring a private right of action "would provide another, perhaps useful, enforcement procedure." *United States ex rel. Glynn v. Capeletti Bros., Inc.*, 621 F.2d 1309, 1317 (5th Cir. 1980); *see Cannon*, 441 U.S. at 688 ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person."). Rather, the issue is whether "considering the purpose and function of the statute and its legislative history, we can find a legislative intent to recognize a judicial remedy." *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1085 (5th Cir. 1980). Here, for the reasons explained above, nothing in the Refugee Act or its history suggests that Congress intended to create a cause of action in favor of

6

States under § 1522(a). To the contrary, allowing States to bring suit, as Plaintiff attempts here, to block refugee placements on the ground that the Federal Government did not consult with them in advance about concerns of theirs that are not specified in the statute, but can only be defined through protracted litigation, would substantially impair, not promote, the Federal Government's flexibility to resettle refugees in times of crisis, and effectively provide States with veto power that Congress expressly intended to preclude. H.R. Rep. No. 99-132 at 19.

As to *Cort* factor four (whether such a cause of action is one traditionally relegated to State law), Plaintiff suggests a judicial remedy is appropriate given the "cooperative, symbiotic relationship between state and federal partners." Pl.'s Opp'n at 15; *see id.* at 14. As an initial matter, this factor is inapplicable because the admission of refugees is exclusively within the province of the Federal Government. *See Toll v. Moreno*, 458 U.S. 1, 10 (1982); *Wright*, 250 F. App'x at 7-8. Further, while Plaintiff is correct that the history of the Refugee Act reflects Congress's careful balancing of federal, State, and local interests, Plaintiff fails to recognize that a right of action under § 1522(a) would only upset the balance Congress struck. *See Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1300 (11th Cir. 2015); *cf. Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 64 (1978) ("[C]ourts must be more than usually hesitant to infer from [Congress's] silence a cause of action that, while serving one legislative purpose, will disserve [an]other.").

Thus, even if the notion of an implied right of action against the Federal Government were not a contradiction in terms, no such right exists here.

### 2. The Declaratory Judgment Act

Plaintiff is also mistaken when it maintains that the Declaratory Judgment Act provides it with a cause of action. Pl.'s Opp'n at 19. As this Court and the Fifth Circuit have unequivocally held, "'the Declaratory Judgment Act alone does not create a federal cause of action.'" Order Denying PI at 7, quoting *Harris Cty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). A would-be plaintiff "cannot use the Declaratory Judgment Act to create a private right of action where," as here, "none exists." *Dallas Cty., Tex. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 945-46 (N.D. Tex. 2014). Plaintiff cites *Planned Parenthood of Hous. & Se. Tex. v.*

7

*Sanchez*, 403 F.3d 324, 334 n.47 (5th Cir. 2005), for the proposition that the Act "[may] provide a cause of action where … jurisdiction is well established." Pl.'s Opp'n at 19. But the court there spoke in a context where an independent source of law, the Supremacy Clause, provided the underlying right, *Planned Parenthood,* 403 F.3d at 331-35, whereas here Plaintiff identifies no other law conferring on it an enforceable right to consultation. *See* Order Denying PI at 6.

### 3. The Administrative Procedure Act

Plaintiff also maintains that it has a valid APA claim to compel the Federal Defendants to comply with the Refugee Act's consultation provisions, on the stated ground that "[c]onsultative requirements" are "discrete." Pl.'s Opp'n at 15-17. The State ignores, however, that the conduct an APA plaintiff seeks to compel under 5 U.S.C. § 706(1) must not only be discrete, it must also be "agency action" within the meaning of 5 U.S.C. § 551(13), as this Court has recognized, Order Denying PI at 9, and as the Supreme Court made clear in *Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 62 (2004) (§ 706(1) "insist[s] upon an 'agency action' … as the action to be compelled"). Plaintiff does not argue otherwise, or that consultation under § 1522(a) is "agency action." Thus, the Court may treat the point as conceded and dismiss Plaintiff's APA claim on that basis, *see, e.g., Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 255 (5th Cir. 2008), as well as the grounds already stated by the Federal Defendants. Fed. Defs.' Mem. at 9-10.

Moreover, Plaintiff's argument that consultation involves discrete actions because "each refugee [resettlement] determination is inescapably individualized," Pl.'s Opp'n at 16-17, is meritless. Section 1522(a) does not require consultation about each refugee to be resettled in a State, but consultation "on the sponsorship and placement process," to "enhance cooperation and communication … regarding placement strategies and decisionmaking." H.R. Rep. No. 99-132 at 18-19. As this Court concluded, such consultation "is best understood as an ongoing, dynamic process," not "discrete agency action reviewable by federal courts." Order Denying PI at 10.[3]

---

[3] Neither case cited by Plaintiff in response, Pl.'s Opp'n at 12-13, involved the type of ongoing consultation process at issue here. And in neither case did the plaintiffs seek injunctive relief compelling the defendant agencies to comply with statutory consultation requirements (as Plaintiff does here, *see* Am. Compl. ¶¶ 25-26, 29); rather, they sought to invalidate agency

8

Finally, adverting to its "flexibility" theme, Plaintiff suggests it is arbitrary and capricious of the Federal Defendants, "in the face of changed circumstances" and alleged terrorist threats, to refuse requests for demographic, medical, and security information about individual refugees. Pl.'s Opp'n at 9-10. In support of this position Plaintiff cites precedent holding that agencies are permitted, and in rare cases, may be required, to reexamine their policies and regulations when confronted by changed conditions. *Id.* at 9. This case does not concern agency rules, however, but an act of Congress that sets forth the precise subjects on which the Federal Defendants must consult, to which a court has no power to add, *see Nw. Airlines*, 451 U.S. at 97; *In re Miller*, 570 F.3d 633, 638 (5th Cir. 2009), regardless of Plaintiff's perception of "changed circumstances."

### B. Plaintiff Has Not Stated a Failure to Comply With the Consultation Requirements of the Refugee Act.

Even if Plaintiff had a cause of action, Counts I and II must also be dismissed because § 1522(a) does not direct the Federal Government to provide State or local governments the case-specific demographic, medical, and security information about individual refugees that Plaintiff complains it has been denied. Fed. Defs.' Mem. at 11-13. In response, Plaintiff argues that "the actual text of [§ 1522(a)] encompasses [its] demands," on the theory that consultation about the Federal Government's "intended" distribution of refugees among the States "necessarily encompasses a whole host of potential topics," including "the particular concerns … of any State." Pl.'s Opp'n at 17-18; *see id.* at 19 ("the statutory scheme requires [consultation] about any and all topics"). The Court must reject this invitation to cast a myopic eye on a single, isolated term—"intended"—and discern therein an implicit mandate to consult and share information with the States, at their whim, about any topic under the sun that pertains to refugees. Section 1522(a) spells out in unmistakable terms the two subjects, the "intended distribution of refugees among the States," and the "sponsorship process," on which the Federal

---

conduct that they alleged had been undertaken without observing mandatory consultation procedures. *Cal. Wilderness Coal. v. U.S. Dept. of Energy*, 631 F.3d 1072, 1079, 1083-96 (9th Cir. 2011); *Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*, 550 F.3d 1121, 1127, 1130-34 (Fed. Cir. 2008). Thus, neither case considered whether consultation itself is "agency action" as required to maintain a claim under APA § 706(1). *SUWA*, 542 U.S. at 62.

Government must consult with the States; there are no others.  *See Salazar v. Maimon*, 750 F.3d 514, 518 (5th Cir. 2014) ("In ascertaining the plain meaning of [a] statute … [t]he inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent.").

Only in passing does Plaintiff assert, *ipso facto*, that the demands the State has made of the Federal Government for information about individual refugees actually fall "within the 'sponsorship process' and 'distribution of refugees' language" of § 1522(a)(2)(A).  Pl.'s Opp'n at 19.  But the text and legislative history of the Refugee Act reflect Congress's intent that consultation take place among the Federal Government, State and local governments, and private resettlement agencies to develop appropriate refugee "placement strategies," H.R. Rep. No. 99-132 at 18-19; *see* 8 U.S.C. § 1522(a)(2)(B)-(D), not to disclose "specific refugee case information."  Am. Compl. Ex. B at 1.[4]  In short, no matter how desirable a State may regard access to particular information in light of "the challenges of the day," Pl.'s Opp'n at 9, the consultation requirement enacted by Congress is not the empty vessel described in Plaintiff's opposition, into which a State may pour any demands for information that occur to it.[5]

## CONCLUSION

For the reasons stated herein and in the Federal Defendants' opening brief, Counts I and II of Plaintiff's Amended Complaint should be dismissed.

---

[4] Plaintiff also opines that unless the Federal Government consults with a State about individual refugees, it may not be possible to assess their likelihood of achieving self-sufficiency there, as Plaintiff suggests is required by 8 U.S.C. § 1522(a)(2)(C)(iii)(III).  Pl.'s Opp'n at 18.  That provision, however, does not direct the Government to make case-by-case determinations about refugees' likelihood of achieving self-sufficiency if settled in a particular State or locality.  Rather, § 1522(a) requires the Federal Government to develop resettlement "policies and strategies … [that] take into account," *inter alia*, "the likelihood of refugees placed in [an] area becoming self-sufficient."  8 U.S.C. § 1522(a)(2)(B), (C).  Thus, Plaintiff's attempt to impute unintended meaning to § 1522(a) by narrowband reference to §1522(a)(2)(C)(iii)(III) also fails.

[5] Plaintiff's reference to Federal Rule of Civil Procedure 54(c) is inapt.  Pl.'s Opp'n at 20-21.  The instant motion is not premised on Plaintiff's failure to ask for the right remedy, but the fact that Plaintiff is not entitled to any remedy.  Plaintiff claims that the Federal Defendants have not complied with the consultation requirements of the Refugee Act based on a failure to provide the case-specific demographic, medical, and security information demanded in the State's December 1, 2015, letter to PRM.  *See* Am. Compl. ¶ 15 & Ex. B; *id.* ¶ 21.  As shown herein, the allegation that the Federal Government has not provided such refugee-specific information states no claim for violation of the Refugee Act on which any relief can be granted.

Dated:  April 11, 2016

    Respectfully submitted,

    BENJAMIN C. MIZER
    Principal Deputy Assistant Attorney General

    JOHN R. PARKER
    United States Attorney

    JOSEPH H. HUNT
    Director

    SHEILA M. LIEBER
    Deputy Director

    ANTHONY J. COPPOLINO
    Deputy Director

    JAMES J. GILLIGAN
    Special Litigation Counsel

    MICHELLE R. BENNETT
    Trial Attorney

    */s/  Stuart J. Robinson*
    STUART J. ROBINSON
    Trial Attorney
    United States Department of Justice
    Civil Division, Federal Programs Branch
    20 Massachusetts Avenue N.W.
    Washington, D.C.  20530
    Tel: (202) 514-9239
    Fax: (202) 616-8470
    Email: stuart.j.robinson@usdoj.gov

    *Attorneys for the Federal Defendants*

**CERTIFICATE OF SERVICE**

      I certify that on April 11, 2016, I caused to be filed electronically the foregoing reply brief with the Clerk of Court using the Court's CM/ECF system, which sends a Notice of Electronic Filing to counsel of record.

                                               */s/ Stuart J. Robinson*
                                               Stuart J. Robinson