IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEXAS HEALTH AND HUMAN SERVICES COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:15-CV-3851-N |
| UNITED STATES OF AMERICA, *et al.*, | § § | |
| Defendants. | § § § | |

## ORDER

This Order addresses Defendant International Rescue Committee, Inc.'s ("IRC")
motion to dismiss [42] and the Federal Defendants'[1] motion to dismiss [74].  Because
Plaintiff Texas Health and Human Services Commission (the "Commission") fails to state
a plausible claim for relief, the Court grants both motions.

### I. THE DISPUTE OVER THE RESETTLEMENT OF SYRIAN REFUGEES

This case arises from the Commission's requests for information regarding the
resettlement of Syrian refugees in Texas.  The Commission contends that, on November 19,
2015, it asked the IRC to apprise it of any plans to resettle Syrian refugees in Texas.  Pl.'s
Am. Compl. ¶ 13 [13].  In a phone call, the IRC informed the Commission that it planned to

---

[1]The Federal Defendants are: the United States of America, the United States
Department of State (the "State Department"), John Kerry in his official capacity as
Secretary of State, the United States Department of Health & Human Services, Sylvia
Burwell in her official capacity as Secretary of Health & Human Services, the Office of
Refugee Resettlement ("ORR"), and Robert Carey in his official capacity as Director of the
ORR.

resettle six Syrian refugees in Dallas, Texas, on December 4, 2015. *Id.* at 14. The IRC declined the Commission's request for additional information concerning the refugees. *Id.* The IRC represented that the State Department had not authorized the disclosure of this information to the Commission. *Id.* ¶ 15. Acting on the IRC's advice, the Commission requested the information from the State Department. *Id.*

While awaiting the State Department's response, the Commission and the IRC exchanged a series of letters. *Id.* ¶¶ 16–17. The Commission notified the IRC that it may terminate its funding or take legal action if the IRC failed to cooperate, and it asked the IRC to temporarily halt resettlement of Syrian refugees in Texas. *Id.* In response, the IRC reiterated its intent to maintain communication with the Commission, but declined to halt the resettlement of Syrian refugees. *Id.*

On December 2, 2015, the Commission brought claims against the Federal Defendants for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, alleging that their actions violated the Refugee Act of 1980 (the "Refugee Act"), 8 U.S.C. §§ 1521–24. *See* Pl.'s Compl. ¶¶ 18–20 [1]. The Commission also brought a claim against the IRC for breach of contract. *See id.* ¶¶ 21–30. The Commission sought a temporary restraining order and preliminary injunction to suspend the resettlement of Syrian refugees in Texas. *Id.* at 9. On December 4, 2015, the Commission withdrew its application for a temporary restraining order. *See* Pl.'s Notice of Withdrawal [10]. On December 7, 2015, the Commission filed an Amended Complaint, asserting an additional claim against the Federal Defendants for declaratory judgment under the Administrative Procedure Act, 5

U.S.C. § 706.  *See* Pl.'s Am. Compl. ¶¶ 19–39.  The Commission amended its application for a preliminary injunction the next day.  *See* Am. Appl. for Prelim. Inj. [17].

Then, on December 9, 2015, the Commission reasserted its request for a temporary restraining order.  *See* Pl.'s Appl. for TRO [18].  The Court denied the application for a temporary restraining order after determining that the Commission had failed to demonstrate a substantial threat of immediate injury.  *See* Order 1–2, Dec. 9, 2015 [19].  On February 8, 2016, the Court denied the Commission's amended application for preliminary injunction.  *See* Order, Feb. 8, 2016 [70] ("Preliminary Injunction Order").  In the Order, the Court once again concluded that the Commission had failed to demonstrate a substantial threat of immediate injury.  *See id.* at 2–6.  The Court also found that the Commission was unlikely to succeed on the merits of its claim for declaratory judgment against the Federal Defendants because it lacked a cause of action.  *See id.* at 6–10.

The Federal Defendants and the IRC now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Commission opposes the motions.  The Commission does not request leave to amend in the alternative.

## II. THE RULE 12(B)(6) STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

    In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  However, a court may also consider documents outside of the pleadings if they fall within certain limited categories.  First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780.  Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the

plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "the district court took appropriate judicial notice of publicly-available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III. THE COURT GRANTS THE FEDERAL DEFENDANTS' MOTION TO DISMISS

The Commission asserts two claims against the Federal Defendants. Count I is a claim for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, that the Federal Defendants' failure to consult in advance with the Commission violates the Refugee Act. Count II is a claim for declaratory judgment under the Administrative Procedure Act, 5 U.S.C. § 706, that the Federal Defendants' failure to consult constitutes unlawful agency action. The Federal Defendants move to dismiss both claims, arguing that the Commission lacks a cause of action to compel advance consultation and that the Refugee Act does not require the Federal Defendants to provide the Commission with particularized information about individual refugees.

The Court determines that the Commission lacks a cause of action to enforce the Refugee Act's advance consultation requirement. Accordingly, the Court grants the motion

and dismisses Counts I and II against the Federal Defendants.  Finding no valid cause of action to support judicial review, the Court does not reach the issue of whether the Commission has stated a plausible violation of the Refugee Act.

### A. The Refugee Act Does Not Provide a Cause of Action

The Court previously determined that the Refugee Act does not confer a private right of action for the States to enforce its provisions.  *See* Prelim. Inj. Order at 7–9.  The Commission's initial contention was that 8 U.S.C. § 1522(a)(2)(A), which requires the Federal Defendants to "consult regularly" with the States regarding their administration of the resettlement program, conferred a private right of action to enforce its provisions.  Now, the Commission further contends that 8 U.S.C. § 1522(a)(2)(D), which requires the Federal Defendants to "take into account" States' recommendations regarding the placement of refugees within a state, confers a right of action as well.  *See* Pl.'s Resp. 5 [78].  The Commission did not plead a violation of section 1522(a)(2)(D) in their Amended Complaint. *See* Pl.'s Am. Compl. 19–21.  Nevertheless, the Court considers both provisions in its analysis and concludes that neither section 1522(a)(2)(A) nor section 1522(a)(2)(D) confers a private right of action for States to challenge the Federal Defendants' administration of the resettlement program.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  "The judicial task is to interpret the statute Congress passed to determine whether it displays an intent to create not just a private right but also a private remedy."  *Id.*  "[T]he interpretive inquiry begins with the text and structure

of the statute . . . ." *Id.* at 288 n.7.  When interpreting a statute, courts presume that Congress did not intend to create a private right of action.  *See La. Landmarks Soc'y, Inc. v. City of New Orleans*, 85 F.3d 1119, 1123 (5th Cir. 1996).  To overcome this presumption, a plaintiff must demonstrate "that Congress affirmatively contemplated private enforcement when it passed the relevant statute."  *Id.* (internal quotation marks and citations omitted).

"[T]he right- or duty-creating language of the statute" is the most reliable indicator of congressional intent to create a cause of action.  *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690 n.13 (1979).  The Supreme Court has previously inferred causes of action "where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case."  *Id.* (collecting cases).  "Conversely, it has noted that there 'would be far less reason to infer a private remedy in favor of individual persons' where Congress, rather than drafting the legislation 'with an unmistakable focus on the benefited class,' instead has framed the statute simply as a general prohibition or a command to a federal agency."  *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 772 (1981) (quoting *Cannon*, 441 U.S. at 690–92).

The Court finds no indication that Congress affirmatively contemplated private enforcement by States when it passed the Refugee Act.  The Refugee Act establishes procedures for the admission and resettlement of refugees in the United States.  The objectives of the Refugee Act, as explained by Congress, are "to provide a permanent and systematic procedure for the admission to this country of refugees of special humanitarian concern to the United States, and to provide comprehensive and uniform provisions for the

effective resettlement and absorption of those refugees who are admitted." Refugee Act of 1980, Pub. L. No. 96-212, § 101(b), 94 Stat. 102. Pursuant to the terms of this statute, the State Department has established the U.S. Refugee Admissions Program, a multi-organizational partnership designed to screen, transport, and provide resettlement services for refugees.

The provisions of the Refugee Act require the Director of ORR and the federal agency administering the U.S. Refugee Admissions Program to consult with States regarding certain aspects of the program. For instance, section 1522(a)(2)(A) provides that these entities "shall consult regularly (not less often than quarterly) with State and local governments and private nonprofit voluntary agencies concerning the sponsorship process and the intended distribution of refugees among the States and localities before their placement in those States and localities." 8 U.S.C. § 1522(a)(2)(A). Section 1522(a)(2)(D) also provides that "[w]ith respect to the location of placement of refugees within a State, the Federal agency . . . shall, consistent with such policies and strategies and to the maximum extent possible, take into account recommendations of the State." 8 U.S.C. § 1522(a)(2)(D).

The Commission concedes that the Refugee Act does not provide States with an express cause of action to enforce its provisions. Rather, the Commission contends that section 1522(a)(2)(A) and section 1522(a)(2)(D) contain implied causes of action.[2] Neither

---

[2]In their Reply, the Federal Defendants raise for the first time the issue of sovereign immunity and whether a court may imply a cause of action against the United States without an express waiver of sovereign immunity. *See* Fed. Defs.' Reply 1–2 [80]. Because the Commission did not have an opportunity to address this argument, the Court does not consider it here.

of these provisions, however, employs the kind of right- or duty-creating language typically associated with an implied cause of action. Instead, Congress phrased both sections as directives to a federal agency regarding its administration of a federal benefits program. Such directives do not evidence congressional intent to create a private cause of action. *See, e.g.*, *Delancey v. City of Austin*, 570 F.3d 590, 594 (5th Cir. 2009) (finding no cause of action to enforce statute that directed federal agency to provide certain information and services to displaced persons); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 n.3 (2002) (noting courts "rarely impute to Congress an intent to create a private right of action" where a statute does not include right- or duty-creating language). Moreover, within the broader context of the nation's immigration laws, Congress has expressly authorized judicial review of other federal agency actions. *E.g.*, 8 U.S.C. § 1252(b)(9) (authorizing review of final removal order). And where Congress creates a comprehensive statutory scheme with express provision for private enforcement in certain circumstances, "it is highly improbable that Congress absentmindedly forgot to mention an intended private action." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979) (internal quotation marks and citation omitted).

The Commission argues that the legislative history of the Refugee Act and its amendments supports the implication of a private cause of action. In particular, the Commission argues that the legislative history demonstrates a clear congressional intent to expand the role of States in the country's refugee program and to maintain the program's ability to respond flexibly to emergency situations. *See, e.g.*, S. Rep. No. 96-256 (1979)

(describing need for flexibility); S. Rep. No. 97-638, at 9 (1982) (calling for increased consultation between federal, state, and local officials).  Although courts should refrain from considering legislative history where the language of the statute is unambiguous, *see United States v. Kaluza*, 780 F.3d 647, 658–59 (5th Cir. 2015), the Court nevertheless notes that the legislative history of the Refugee Act says nothing about a State's ability to enforce the statute via a private cause of action.  In fact, the House Committee on the Judiciary, in considering the House version of a 1986 amendment to the Refugee Act, noted that the consultation requirement is "not intended to give States and localities any veto power over refugee placement decisions, but rather to ensure their input into the process and to improve their resettlement planning capacity."  H.R. Rep. No. 99-132, at 19 (1985).  The legislative history of the Refugee Act simply does not support the Commission's position.

Finding no evidence of congressional intent to create a private cause of action to enforce the Refugee Act's provisions, the Court declines to imply one here.

### B. The Administrative Procedure Act Does Not Provide a Cause of Action

The Court has held that the Administrative Procedure Act does not provide the Commission with a cause of action because advance consultation under the Refugee Act is not "agency action" within the meaning of the statute.  *See* Prelim. Inj. Order at 9–10.  The Commission advances several new arguments in support of its position that advance consultation constitutes agency action.  These arguments are unavailing, however, and the Court stands by its prior holding.

The Administrative Procedure Act authorizes "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," to seek judicial relief.  5 U.S.C. § 702.  Section 551(13) defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  If a person challenges a federal agency's failure to act, "[t]he reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."   5 U.S.C. § 706(1).

An agency's failure to act is "properly understood as a failure to take an *agency action* – that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004).  Like the other forms of agency action defined in section 551(13), a failure to act must be discrete. *Id.* at 63.  The "common business of managing government programs" – such as "prepar[ing] proposals, conduct[ing] studies, [and] meet[ing] with Members of Congress and interested groups" – does not constitute agency action. *Fund for Animals, Inc. v. BLM*, 460 F.3d 13, 19–20 (D.C. Cir. 2006) (holding agency budget request is not agency action).

The Commission contends that the Federal Defendants' failure to consult in advance with the States is a failure to take an agency action under the Administrative Procedure Act.  However, the statutory provisions cited by the Commission do not contemplate "agency action" as the term is defined in 8 U.S.C. § 551(13).   Under 8 U.S.C. § 1522(a), the Federal Defendants must "consult regularly (not less often than quarterly)" with the States regarding "the sponsorship process and the intended distribution of refugees" prior to resettlement.

8 U.S.C. § 1522(a)(2)(A).   The Federal Defendants also must "take into account recommendations of the State" regarding "the location of placement of refugees within a State . . . ."   8 U.S.C. § 1522(a)(2)(D).   But neither advance consultation nor internal consideration constitute "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof."   *Id.*   Rather, both procedures are part of the "common business of managing government programs."   *Fund for Animals*, 460 F.3d at 19–20.   This kind of executive activity is not subject to judicial review under the Administrative Procedure Act.

The Commission argues that the Refugee Act's advance consultation requirement is discrete because "the sponsorship process" and "the intended distribution of refugees," 8 U.S.C. § 1522(a)(2)(A), are each determined on an individual basis.   But even if the consultation requirement could be parsed into several separate discourses regarding each individual refugee, the statute nevertheless contemplates "regular[]" consultation on at least a quarterly basis.   *Id.*   Thus, advance consultation under the Refugee Act is not a discrete agency action, but rather an ongoing process of communication.

The Commission contends that two cases – *California Wilderness Coalition v. U.S. Department of Energy*, 631 F.3d 1072 (9th Cir. 2011), and *Salmon Spawning & Recovery Alliance v. U.S. Customs & Border Protection*, 550 F.3d 1121 (Fed. Cir. 2008) – support its position that advance consultation constitutes discrete agency action.   Neither case is apposite.   *California Wilderness* involved an objection to a Department of Energy order formally designating two national interest electric transmission corridors.   631 F.3d at 1080–83.   The court held that the designation order was unlawful because the Department

of Energy had failed to comply with its statutory duty to consult with affected States before entering the orders. *Id.* at 1085–95. Importantly, the final agency action at issue in *California Wilderness* was the designation order itself, not the failure to consult.

Similarly, in *Salmon Spawning*, the plaintiffs alleged that the government agencies had violated the Endangered Species Act "by allowing the importation of ESA-listed salmon without completing the consultation required" by the act. 550 F.3d at 130. The court in *Salmon Spawning* found that the plaintiffs had standing to bring their claim. *Id.* at 1130–32. But *Salmon Spawning* never addressed the question of whether consultation constitutes agency action.

The Commission has not alleged that the Federal Defendants violated the Refugee Act by improperly resettling refugees. Rather, the Commission challenges the lack of advance consultation itself, regardless of whether the Federal Defendants decide to resettle refugees in Texas or not. But the alleged inadequacies in the Federal Defendants' consultations with the Commission are not final agency actions reviewable by this Court. Because the Federal Defendants' alleged failure to consult with the Commission prior to the resettlement of refugees does not constitute agency action, the Commission lacks a cause of action under the Administrative Procedure Act.

### C. The Declaratory Judgment Act Does Not Provide a Cause of Action

In its Preliminary Injunction Order, the Court held that the Declaratory Judgment Act does not provide a cause of action for the enforcement of the Refugee Act's advance consultation requirement. *See* Prelim. Inj. Order at 7. The Commission nevertheless

maintains that the Declaratory Judgment Act provides a cause of action, citing *Planned Parenthood of Housing and Southeast Texas v. Sanchez*, 403 F.3d 324 (5th Cir. 2005). In *Planned Parenthood*, the Fifth Circuit noted in dicta that the Declaratory Judgment Act "might well provide a cause of action where . . . jurisdiction is well-established." *Id.* at 334 n.47. The Fifth Circuit mentioned this possibility, however, within the context of a preemption claim based on the Supremacy Clause – a very different circumstance.[3] More importantly, recent Fifth Circuit precedent soundly establishes the principle that "the Declaratory Judgment Act alone does not create a federal cause of action." *Harris Cty. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). Thus, the *Planned Parenthood* dicta has been repudiated.

The Court accordingly holds that the Commission does not have a cause of action under the Declaratory Judgment Act.

## IV. THE COURT GRANTS THE IRC'S MOTION TO DISMISS

The Commission asserts one claim against the IRC for declaratory judgment under 28 U.S.C. §§ 2201–02 that the IRC has breached its contracts with the Commission. Under Texas law, to state a claim for breach of contract, the Commission must allege "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a

---

[3]In particular, the Fifth Circuit held that the plaintiff had an implied cause of action to bring the preemption claim without identifying the source of the enabling statute or constitutional provision. *Id.* at 334. The Fifth Circuit's statement merely explored the potential justifications for ample precedent permitting judicial review of plaintiffs' preemption claims. *Id.* at 334 n.47.

result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)

(quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.

2001)).  The IRC moves to dismiss the Commission's breach of contract claim, arguing that

the Commission has failed to allege a plausible breach of the parties' agreements.  Because

the Commission does not allege sufficient facts to establish a breach, the Court grants the

motion and dismisses the breach of contract claim.

### A. Contractual Provisions Requiring Cooperation

To facilitate the provision of services to admitted refugees, the Commission entered

into two agreements with the IRC.  The first agreement concerns the provision of cash

assistance to refugees, *see* Pl.'s Am. Compl., Ex. J 1 [13-9] ("Ex. J"), and the second

agreement relates to the provision of social services to refugees, *see* Pl.'s Am. Compl., Ex.

K 1 [13-10] ("Ex. K").  Both agreements require the IRC to "[p]rovide services in

compliance with this contract and with applicable Federal laws and regulation [sic], state

laws and regulations, and Commission policies including service delivery standards."  Ex.

J at 5; Ex. K at 5.

The Commission alleges that the IRC violated its duties under federal law by refusing

to provide information regarding specific refugees.  Although the Commission does not

identify in its Amended Complaint the kind of information it seeks, the Commission did

attach a letter to its Amended Complaint asking the IRC for "all information relating to

Syrians slated or scheduled for resettlement in Texas," including information about the

individual Syrians' security screenings. Pl.'s Am. Compl., Ex. H [13-7] ("Ex. H").  Because

"[a] written document that is attached to a complaint as an exhibit is considered part of the complaint," *Ferrer*, 484 F.3d at 780, for purposes of the Rule 12(b)(6) motion, the Court assumes that this information was withheld.

According to the Commission, the IRC's statutory duty to provide this information arises from 8 U.S.C. § 1522(a)(1)(B)(iii). This section states that "[i]t is the intent of Congress that in providing refugee assistance under this section . . . local voluntary agency activities should be conducted in close cooperation and advance consultation with State and local governments." 8 U.S.C. § 1522(a)(1)(B)(iii). The provision does not *require* "close cooperation and advance consultation"; rather, its language is hortatory. By contrast, several other portions of the Refugee Act specifically require the disclosure of certain information to the States. *E.g.*, 8 U.S.C. § 1522(b)(4)(C) ("The Secretary shall . . . assure that State or local health officials at the resettlement destination within the United States of each refugee are promptly notified of the refugee's arrival and provided with all applicable medical records . . . ."); 8 U.S.C. § 1522(b)(7)(B) (requiring nonprofit agencies to notify local welfare offices of refugees' employment offers and provide documentation regarding receipt of cash assistance and other services). Without more, section 1522(a)(1)(B)(iii)'s statement of congressional intent does not support a statutory entitlement to the information the Commission seeks. *Cf. Ridgely v. Federal Emergency Mgmt. Agency*, 512 F3d 727, 739 (5th Cir. 2008) (finding congressional statement of intent to provide "continuing" assistance did not mandate provision of continued rent assistance payments where statute left specifics of program to agency's discretion).

1mm

The Commission does not identify any other law or regulation that the IRC has violated.[4]  Accordingly, the Court determines that the Commission has not stated sufficient facts to show the IRC breached its duty to provide services in accordance with the law.

### B. Contractual Provisions Requiring Access to Records

The Commission alleges that the IRC's failure to provide information regarding specific refugees also violates the cooperation clauses in the agreements.  According to this provision, the IRC "must cooperate fully and allow [the Commission] and all appropriate federal and state agencies or their representative's [sic] access to client records, books, and supporting documents pertaining to services provided." Ex. J at 1; Ex. K at 1.  This provision is part of the Commission's authority "to monitor and conduct fiscal and/or program audits" of the IRC "to the extent of services provided . . . ."  *Id.*  In light of the Commission's authority to monitor and audit its services, the IRC must submit to "[o]n site visits" and provide access "to all books and records . . . for purposes of inspection, monitoring, auditing, or evaluating such materials."  *Id.*

The IRC argues that its obligation to provide access to records pertains only to "services provided," and therefore does not apply to refugees "slated or scheduled for

---

[4]In its Response, the Commission argues that section 1522(a)(2)(A) requires consultation "before [refugees'] placement," and that section 1522(a)(2)(D) requires placement decisions to "take into account" States' recommendations "to the maximum extent possible."  *See* Pl.'s Resp. to IRC's Mot. to Dismiss 4 [64] (quoting 8 U.S.C. § 1522 (a)(2)(A), (D)).  However, both of these provisions are directed to the federal agency administering the resettlement program, not nonprofit agencies providing resettlement services.  *See* 8 U.S.C. § 1522 (a)(2)(A), (D).

resettlement in Texas." *See* Ex. H.[5]  In its Response, the Commission did not address this argument.  The Court agrees with IRC's interpretation of the provisions requiring access to records.  These provisions pertain to services provided after the resettlement of refugees, not before.  The Commission does not allege that the IRC provided cash assistance or social services to refugees who had yet to arrive in Texas.  The Court finds that the Commission has not stated a plausible breach of these provisions.[6]

### CONCLUSION

The Commission lacks a cause of action – under either the Refugee Act, the Administrative Procedure Act, or the Declaratory Judgment Act – to enforce the Refugee Act's advance consultation requirement.  The Commission also fails to state a plausible claim for breach of contract against the IRC.  Accordingly, the Court dismisses all claims against the Federal Defendants and the IRC.

---

[5]The IRC also argued that 8 C.F.R. § 208.6 and 8 U.S.C. § 1202(f) prohibit the disclosure of this information.  Because the Court resolves the motion to dismiss on other grounds, the Court does not reach this theory.

[6]In its Response, the Commission asserts that "[b]eyond its failure to provide information, IRC has refused to comply with Plaintiff's request that it cease the resettlement of refugees from Syria" until the Commission has "ha[d] its say in the conversation of who is, or is not, an 'eligible individual.'"  Resp. at 3.  Nowhere in the Amended Complaint, however, does the Commission allege that the IRC has provided resettlement assistance to ineligible clients.  When considering a Rule 12(b)(6) motion to dismiss, a court generally limits its review to the face of the pleadings.  *See Spivey*, 197 F.3d at 774.  Accordingly, the Court does not consider this theory.

Signed June 15, 2016.

_____
David C. Godbey
United States District Judge